RUCKER & SHEELY CO. v. DR. H. S. WILLEY AND THE KRAMER REALTY COMPANY.

(Filed 12 September, 1917.)

1. **Negligence—Landlord and Tenant — Damages — Joint Cause—Proximate Cause.**

   Where under the terms of his lease the landlord has assumed the responsibility of making repairs of the leased premises with diligence and has charge thereof, through his employee or janitors, and has rented an office over a store therein, with a defective or choked drain pipe, to a dentist, which he had for years failed to inspect; in an action by the lessee of the store against him and the lessee of the office, evidence that the dentist had provided an insufficient outlet for the water flowing from his cuspidor, and that he had permitted the overflow from the cuspidor to continue all night, and from this and the choked condition of the drain the water overflowed and went through the floor and injured plaintiff's stock of goods, is sufficient to sustain a verdict against both defendants jointly, the negligence of each, if established, being the proximate cause of the injury.

2. **Same—Evidence—Instructions—Trials.**

   Where there is evidence of negligence on the part of a landlord in failing to properly repair a drain pipe in the office of his tenant, and of negligence on the part of the tenant, a dentist, in failing to make proper connection therewith for the waste water flowing from his cuspidor, and that he negligently permitted the water to continue to flow all night and damage was caused to the plaintiff's goods, the lessee of the store beneath, in an action by the lessee of the store against the landlord and his codefendant, the dentist, a charge is proper, that if the codefendant installed a

system for the waste that was unsafe, which a reasonably prudent man would not have done and which was the proximate cause of the injury, the jury should render a verdict against him.

APPEAL by both defendants from *Justice, J.,* at June Special Term, 1917, of PASQUOTANK.

The plaintiff (which is a large dry goods concern), as tenant of defendant Kramer Realty Company, occupied one of the storerooms on the ground floor of the large three-story building in Elizabeth City, known as the Kramer Building, and belonging to said company. The defendant H. S. Willey, who is a practicing dentist, also occupied as tenant two of the offices of the second floor of said building, directly over the rear portion of plaintiff's store. The building was equipped with water and sewer pipes, and as a part of the lease contract, water and sewerage were furnished to the various tenants by the lessor company.

In December, 1915, the plaintiff found, upon opening the store one morning, that during the night the floor of the store had been flooded and the stock injured by water, which was then falling in large quantities from the ceiling just under Dr. Willey's office. The evidence tended to show that 500 to 600 gallons had come through, and that it would have taken from eight to nine hours for it to leak through. The floor in Dr. Willey's office was found saturated with water. There was no sign of any water having leaked from any other portion of the second floor. Dr. Willey had for the operation of his dental apparatus an arrangement different from the other tenants, in that he had some extra plumbing to carry the water into and away from the fountain cuspidor on his dental chair, which extra plumbing was put in and paid for by him, with the consent and approval of the Kramer Realty Company. This fountain cuspidor was not connected with the main water and sewerage pipes in the building by an iron pipe, but rubber hose was used, and it was so constructed that the water would run into and out of it continuously if the waste pipe was clear.

The plaintiff brought this action against both defendants, and from the verdict and judgment both the defendants appealed.

*Ward & Thompson for plaintiff.*
*J. B. Leigh and Aydlett & Simpson for Kramer Realty Company.*
*Ehringhaus & Small for Dr. Willey.*

CLARK, C. J. As to the Kramer Realty Company, the rule applicable may be thus stated: "The occupant, and not the owner or landlord, is ordinarily liable to third persons for injuries caused by failure to keep the premises in repair. But this liability, however, is extended

to the landlord where he contracts to repair, as in this case, or lets the premises in a ruinous condition, or where he authorizes a wrong." 1 Jaggard Torts, 223, approved in *Knight v. Foster,* 163 N. C., 329.

The contract in this case provided: "If during the term, the demised premises shall be damaged by fire or causes other than the act, default or neglect of the tenant, they shall be repaired by the lessor with all reasonable diligence."

It is true that Dr. Willey had no written lease, because of the fact that he objected to the length of time required, but his offices were rented to him with the same privileges as the other tenants and he was subject to the same penalties. Besides, as between the landlord and the plaintiff, the obligation to repair was not released by any neglect of Dr. Willey. There being evidence tending to show that this overflow of water was caused by the stoppage of the water pipes or other defect in the water system above plaintiff's store, the jury were warranted in finding that the goods of the plaintiff were injured by the negligence of the Kramer Realty Company.

The contract of said company with the tenants provided that it should have the right at all times to enter the premises to make such repairs and alterations as were necessary. It had twice made such repairs for Dr. Willey's office. It had a janitor in charge of the building and its manager had a key to Dr. Willey's room and the other rooms in the buildings to supervise them generally, and there was also evidence that the additional plumbing arrangements in Dr. Willey's office were installed before he moved in, with the permission and supervision of the Kramer Realty Company, under stipulation in the lease that all repairs should be done with its approval and should be the property of the lessor at the termination of the lease. There was further evidence that the water in the building was under the control of the Kramer Company, which had a cut-off on the outside of the building over which the tenants had no control, and that the waste pipes had been there for seven years without being inspected, and the uncontradicted evidence of the plumber was that there was a stoppage somewhere beyond the cuspidor of Dr. Willey, and that the sewerage pipe between Dr. Willey's room and the toilet room to carry off the water was clogged up.

As a part of the agreement between the plaintiff and the Kramer Realty Company was that the latter was to furnish water to the building. The Kramer Realty Company was in control of the water and impliedly agreed to protect its tenants from damages arising from negligence in oversight and control or want of repair of the water system. The landlord is liable to the tenants for damages arising from defect of plumbing when it is controlled by the landlord and he has agreed in the lease to keep the building in repair.

The jury also found that the plaintiff's goods were injured by the negligence of Dr. Willey, and there was evidence to justify this in the fact that he allowed the water to run through his cuspidor all night, when he did not need it for use and when no one was present to cut it off in case of stoppage in the pipe below. The Kramer Realty Company was also negligent in its lack of proper oversight through its janitor and manager in not ascertaining that the cuspidor was allowed to run under such circumstances, and that there was such defect in the hose from the cuspidor or in the pipe which, if repaired, would have prevented the destruction of plaintiff's goods.

We think that the court did not err in charging "that if Dr. Willey left the water running that night, or that he installed a system of waste through the rubber hose that was unsafe, such as a reasonably prudent man would not have installed, and that this was the proximate cause of the injury, the jury should find the first issue that the plaintiff was injured by the negligence of the defendant Dr. H. S. Willey."

There was no evidence that the pipe burst from freezing or other cause, without negligence on the part of defendants, but there was evidence that the overflow of the pipes, which resulted in damage to the plaintiff's goods, was caused by a stoppage in the pipes or defect therein. If so, this stoppage was negligence on the part of the Kramer Realty Company and in Dr. Willey in permitting the continuous flow of water at night, which justified the jury in finding that the combination was the proximate cause of the injury to the plaintiff's goods. If such flow had been in the day it could have been discovered in time to prevent damage.

There was evidence both that the hose from Dr. Willey's cuspidor to the connection with the pipe was defective, and that the running of the water all night caused the overflow, which would not have occurred if he had cut off the water running through his cuspidor when he left his office that afternoon.

The stoppage in the pipe would not have caused the overflow if the water from the cuspidor had not been running, and this running of the water, negligent as it was, would not have caused the overflow if there had been no stoppage in the pipe or proper supervision by Kramer Company's janitor. There was, therefore, evidence which justified the jury in finding that the proximate cause of the damage to the plaintiff's goods was the negligence of Dr. Willey and the Kramer Realty Company jointly.

The motion to nonsuit was properly refused as to both defendants. We need not discuss the other assignments of error.

No error.