SCHENCK, J., took no part in the consideration or decision of this case.
The plaintiff alleged and offered evidence tending to show that on or about 10 February, 1933, he was an employee of the Highway Commission and was assisting in the operation of a truck on the Concord-Charlotte Highway known as No. 15, running through Newell. The highway was covered with snow and sleet, and the plaintiff and another employee named Curtis Long had attached a snow plow to the front of the truck in order to remove sleet and snow. At about seven o'clock at night they stopped the truck in front of Newell's store. The plaintiff said: "When Mr. Long stopped the truck I got out on the right-hand side away from the highway. . . . When the truck stopped it was about two-thirds off the hard surface to the right. The hard surface there is eighteen feet wide. The truck is about five and one-half feet wide. . . . The road is straight there about one-half mile in each direction. . . . Mr. Long stopped the truck to fix one of the lights. This light was not one that was bought on the truck. It was an extra red light we carry when we drag snow. It was on behind right over the stop light. Two lights on the rear of the truck were burning. . . . The lights on the rear of the truck when it stopped were burning. The red lantern which we were going to fix had been jumping up and down. It had a red globe that gave a red light. . . . I was standing right behind the truck. I was on the hard surface. I was standing about two feet back of the lights. I saw a car coming from Charlotte going toward Concord. I saw the car that hit the truck before it got to me. Mr. Long said, `Look out, they are going to hit you.' The lights at the filling station were burning. My truck was right opposite the filling station. There were about fifteen lights there. . . . We stopped in front of the filling station because we could *Page 681 
see better. We had plenty of light there and everybody else could see. . . . There was about six feet of hard surface on the right side between the parked truck and the center of the pavement. There was nine feet of hard surface to the left of the center of the pavement. . . . The car knocked the truck forty-five or fifty feet I reckon. . . . At the time this car hit the truck I didn't see any car coming from Concord toward Charlotte in sight. I could see down the highway a half mile. The car hit me. It hit me on the hip here. It broke my hip. It knocked me down the road there. . . . My opinion is that the speed the car was making was fifty-five or sixty miles. I didn't get up when it knocked me down. I couldn't. . . . Mr. Eury, the defendant, was the one who hit me. He came to the hospital to see me. I can't hardly remember what he told me, I was suffering so. We had stopped just about two minutes. Mr. Long had come to the store to get a string or something to tie the lantern with. He came back without one and we decided to fasten it down with a little old chain we had there." There was other evidence corroborating the testimony of plaintiff.
The defendant testified that at the time of the accident he was traveling between thirty and thirty-five miles per hour. He said: "I did not see any lights on the truck as I approached it. When I approached the truck I was, I guess, thirty-five or forty feet from it, and at that time I didn't see any lights. I never saw any lights on the truck before the collision. . . . The truck was on the pavement. As near as I could tell all of it was on the pavement. On the left side of the truck on the pavement a car was approaching me, coming from toward Concord. It looked like that car was about the same distance I was from the truck. I didn't have time to go by it. . . . I applied my brakes. I didn't attempt to turn my car in either direction. If I had turned to the left, I would have hit the car coming. If I had pulled to the right, I would have hit whatever was standing at the right of the truck. I did not see Babbs until after he was hit." The defendant offered in evidence sections ten and eleven of the ordinance of the State Highway Commission, which are as follows: "Section 10. It shall be unlawful to repair any motor vehicle upon the used or traveled portion of any State Highway." "Section 11. It shall be unlawful to leave any vehicle or other obstruction whatsoever, standing upon a State Highway at night, either on the traveled portion thereof or on the shoulders, unless the same shall be protected by lights making it plainly visible; and in no event shall such vehicle be left standing upon the highway for a period longer than ten (10) hours."
The court submitted issues of negligence, contributory negligence and damages. These issues were answered in favor of the plaintiff and the verdict awarded damages in the sum of $6,500.
From judgment upon the verdict the defendant appealed. *Page 682 
The defendant asserted that the motion for nonsuit should have been granted for the reason that the evidence of the plaintiff disclosed that at the time of his injury he was undertaking "to repair" a truck on the highway in violation of section 10 of the ordinances of the Highway Commission. The plaintiff asserts that the mere tying of a red lantern on the rear of a truck is not a work of "repair." The textbooks and decided cases have usually construed the term "repair" to mean restoration to original condition as nearly as possible. Manifestly, in the ordinary transactions of life the word "repair" presupposes a defect, imperfection or deterioration in the truck. The plaintiff undertook to more securely fasten a red lantern, which, of course, involved no idea of defect.
In reference to swinging gates, this Court has held that "a change is not a repair." Knight v. Foster, 163 N.C. 329.
Consequently, there is no evidence that the plaintiff at the time of his injury was violating any statute designed for the preservation and protection of life or limb. See C.S., Michie's Code, 1931, 2621(72).
There are other exceptions to the charge and to the failure to give requested instructions, but a careful examination of the record does not produce the conclusion that error was committed in applying the law to the facts. Indeed, the cause presents in its essential aspects, only controverted issues of fact, and such issues have been brought to rest by the verdict of the jury.
Affirmed.
SCHENCK, J., took no part in the consideration or decision of this case.