W. T. FOWLER, ADMINISTRATOR OF RALPH FOWLER, DECEASED, v. CHAMPION FIBRE CO., THE ABERTHAW CONSTRUCTION CO., AND C. A. HILDEBRAND.

(Filed 27 January, 1926.)

1. **Negligence—Evidence—Contracts—Master and Servant—Independent Contractor—Safe Place to Work—Hearsay Evidence.**

Evidence in this case held sufficient of the actionable negligence of defendants under the plea of independent contractor to go to the jury, that the witnesses heard the alleged vice principal of the alleged independent contractor give instructions to the plaintiff's intestate, a water carrier for many employees of all the defendants, as to carrying cooled water to the employees just before the expiration of the noon interval for dinner, upon the question as to whether the intestate was at the time of his injury acting within the scope of his duties, or pursued an unsafe and dangerous way when a proper and safe one had been provided for him nearby, and not objectionable as hearsay.

2. **Evidence—Nonsuit—Negligence—Questions for Jury.**

Upon defendants' motion as of nonsuit, the evidence and every reasonable inference therefrom is to be construed in the light most favorable to the plaintiff, and held in this case, sufficient to be submitted to the jury upon the issue of defendants' actionable negligence proximately causing the death of plaintiff's intestate.

3. **Instructions—Evidence—Statutes.**

In an action to recover damages for the negligent killing of plaintiff's intestate: *Held*, the charge of the judge to the jury upon the law of negligence, proximate cause and contributory negligence met the requirements of C. S., 564, that the court state in a plain and correct manner the evidence in the case, and declare and explain the law arising thereon.

APPEAL from *Finley, J.*, and a jury, at May Term, 1925, of HAYWOOD. No error.

W. T. Fowler was duly appointed administrator of Ralph Fowler, deceased. He contends that the defendant, Champion Fibre Company, is a corporation and owned and operated a large pulp and paper mill at Canton, N. C. In the conduct of its business and the operation of its plant, it used and maintained certain steam engines, steam pipes, etc. The defendant, Aberthaw Construction Company, a corporation, was engaged in constructing plants, buildings and other structures and was assisting the Champion Fibre Company in making an addition to what is known as a "finishing plant" for it. That C. A. Hildebrand, before and at the time of the injury and death of Ralph Fowler, was employed by the Champion Fibre Company as foreman and superintendent of what is known as the "pipe fitters" department of the Champion Fibre Company's plant, and had control and supervision of the water system and pipe lines used in the operation of the plant. It was his duty to install the necessary pipes used in conveying water and steam in and around the plant and to use due care to keep same in a proper and safe condition. That on and prior to 24 July, 1924, Ralph Fowler was in the employment of the two defendant corporations as a "water boy" or carrier. It was his duty to carry water from certain parts of the plant to divers other points to the employees for drinking purposes. That in the performance of this duty, Ralph Fowler was injured, which resulted in his death, by the negligence of the defendant. That in the operation of the paper and pulp mill and in constructing the addition, the finishing plant, the defendants had employed a large number of laborers, engaged in divers work in and around the plant, among them Ralph Fowler, the "water boy" to carry them water. That some time prior to the injury of said Fowler, on 24 July, 1924, the Champion Fibre Company had caused to be dug in the ground a pit, basin or vat, some 12 feet in circumference, about 5 or 6 feet deep, at or near where the laborers and Ralph Fowler were employed. That for some time the Champion Fibre Company had carelessly and negligently permitted water to run into and accumulate in the pit some 3 or 4 feet deep. The defendants had carelessly and negligently placed a plank, some 12 inches wide and from 12 to 15 feet long, across the top of the pit and ordered and permitted the employees to go over this plank in the prosecution of their duties. That before the injury and death of Ralph Fowler, the Champion Fibre Company and C. A. Hildebrand had maintained a pipe leading from the main engine in said plant to a suitable place on the side of the building to carry the exhaust steam from the engine. When it exhausted it would go up into the air. Shortly prior to the injury to Ralph Fowler, C. A. Hildebrand, with the knowledge, ac-

quiescence and consent of the Champion Fibre Company, carelessly and negligently changed the steam pipe so that the exhaust would go into the pit before mentioned, and the exhaust steam and water were permitted to accumulate and remain in the pit, and it became and remained in a hot and boiling condition. That the plank for the employees to walk across this pit, in the prosecution of their duties, defendant carelessly and negligently failed to nail or otherwise fasten down the ends so as to prevent it from turning over or the ends from sliding from the bank into the pit. No guard or railing was provided on the side of the plank. That the place was dangerous—the narrow plank across the pit of boiling water. That Ralph Fowler, an inexperienced youth of 15 years of age, while engaged in the performance of his duty as a "water boy" was required to cross the narrow plank over the hot and boiling water in the pit. "That on 24 July, 1924, while the plaintiff's intestate was lawfully engaged in the performance of the duties of his said employment, and while he was walking across the aforesaid plank extended over and across the aforesaid pit, basin or vat of boiling water, as aforesaid, as he had been directed, ordered, required, permitted, suffered and allowed to do by the said defendants, and each of them, and without any fault or negligence on the part of the plaintiff's said intestate, but solely by reason of each, all and every of the aforesaid careless, tortious, negligent and reckless acts, conduct and omissions of the said defendants, and each of them, the aforesaid plank tilted or turned over, thereby throwing the plaintiff's intestate down and into the aforesaid hot, scalding and boiling water, and by reason thereof the plaintiff's intestate was so badly and fearfully scalded and burned that he was caused to endure great and indescribable pain, anguish, torture and distress of body and mind so that he suffered, languished and died in the evening of the following day, to wit, 25 July, 1924, to the great damage of the plaintiff," etc.

. The defendants deny the material allegations of the complaint and say, in part: "It is admitted that the plaintiff's intestate, Ralph Fowler, was in the employ of the Aberthaw Construction Company, as water carrier and sustained injuries while in its employ resulting in his death, but the defendants aver that his said death was caused and contributed to by his own carelessness and negligence in attempting to cross or use a plank across the ditch of boiling water without any orders or instructions from the defendants and at a time when he was not engaged in the performance of his duties as water carrier, and in failing and neglecting to use the usual path or route prepared by the Aberthaw Construction Company for the use of the plaintiff's intestate and other employees. The defendants aver that the said Ralph Fowler was a boy sixteen years of age, the usual and ordinary age of water carrier boys, and knew, or should have known that it was unsafe and dangerous to attempt to walk

across a plank over the ditch of boiling water, and knew, or should have known that it was his duty to cross the ditch a few feet west of where he was injured at the place prepared by the Aberthaw Construction Company for the use of its employees in crossing said ditch of water. . . . The defendants aver and allege that the said Ralph Fowler was not in the line of his duty at the time of the accident and was attempting to cross the ditch at the place not provided for that purpose and voluntarily selected a dangerous route when the defendant Aberthaw Construction Company had provided a proper and safe place for crossing said ditch of boiling water at a place only a few feet distant from where the plaintiff was injured. . . . And defendants aver that the death of the said Ralph Fowler was caused and contributed to by his own negligence in failing to exercise reasonable and ordinary care for his own safety, and especially in failing to use the usual route and pathway provided for the water boys and others, and in negligently attempting to cross the ditch containing the boiling water at an improper place, without the knowledge, orders or directions of the defendants or either of them. The defendants aver that the work of constructing the addition to the paper plant of the Champion Fibre Company was being done by the Aberthaw Construction Company as an independent contractor which employed its own employees and had exclusive authority and control over them. And the defendants aver that the said Ralph Fowler was not in the employ of the Champion Fibre Company, or C. A. Hildebrand, and that they had absolutely no control or authority over him whatever."

The issues submitted to the jury and their answers thereto, are as follows:

"1. Was the plaintiff's intestate, Ralph Fowler, killed by the negligence of the defendants; and if so, which one, as alleged in the complaint? Answer: Yes, by all the defendants.

"2. Did plaintiff's intestate, Ralph Fowler, by his negligence contribute to his death as alleged in the answer? Answer: No.

"3. What amount, if any, is plaintiff entitled to recover? Answer: $6,250."

The court rendered judgment on the verdict. Defendants made several exceptions and assignments of error. The material ones and necessary facts will be considered in the opinion.

*A. Hall Johnston and Alley & Alley for plaintiff.*
*Martin, Rollins & Wright for defendants.*

CLARKSON, J. The first assignment of error of defendants: "The plaintiff asked the witness, Oscar Ferguson, the following question: 'Do you know whether these boys were instructed to have a bucket of water

ready cooled and all by the time the whistle blew so they could have it ready to deliver?' The witness then stated that 'they were instructed by George Vaincourt to have fresh water there on the job when the whistle blew; that they were instructed to have their water ready when the whistle blew.' The defendants contended that this evidence was hearsay and was incompetent against Champion Fibre Company and C. A. Hildebrand, as George Vaincourt was not in their employ. It was not only incompetent, but was extremely prejudicial to the defendants." The balance of the testimony of this witness was: "That just before the whistle blew on this occasion, witness saw the boys start; that he did not see them after they got on the plank; that they were right close to the end of the plank, to the best of his knowledge they were about three or four feet of the plank when witness saw them last; that he heard the boy holler; that just before he heard him holler he saw the exhaust steam; that when the steam gushed out it would blind one and hit one until he couldn't see or realize where he was going; that the plank was not fastened down." It was in evidence that the Fowler boy, a few minutes before one o'clock, with another boy also a "water boy," was going to get the buckets to have the water ready for the workmen.

The contention of defendants was that Ralph Fowler had a stick and was playing with it in the water, that he was not in the line of duty; that the plank was not used as a walkway—other ways were provided; that the pit had planks around it which prevented anyone from getting in there unless they climbed under or over. Walter Price, testified: That no way was left to walk across the steam; "that there was a bank on one side and building on the other; that the planks prevented anyone from getting in there unless they climbed under or over; that Mr. Hildebrand and witness (Price) and George Vaincourt and Owens were present when this was done; that witness does not know if the planks were put back, and that he did not see the rails after they were torn down." George Vaincourt was the foreman of the whole concrete crew. Witness for defendant, Walter Price's evidence showed Vaincourt was with the head men in putting up railings around the pit. This evidence tended to show that Vaincourt and Hildebrand were in a common employment, Hildebrand was foreman and superintendent of Champion Fibre Company pipe fitters department. W. E. Miller testified for plaintiff, in part, that the Fowler boy had a stick in his hand "He walked up in ten feet of the pond and he threw his stick down and walked out on the board; and witness saw a gush of steam come and the boy hollered; that he had gone about four or five feet out on the board before the steam gushed up; that the next witness saw was when they got him pulled out on the other side; and it was two minutes to one. . . . That witness did not see them any more after the steam came up until he

was pulled out of the pool, that when they pulled his clothes off the hide rolled down with them, just torn all to pieces; that witness knew of the instructions given the boys about having water at one o'clock, that George Vaincourt gave them these instructions, that he told the boys to always have their water cold for one o'clock ready to start out when the whistle blew, and he told the boys to go to the ice plant and get ice through the noon hour if they had time; that the order was given the boys four or five days before Ralph was injured. On cross-examination, brought out by defendants, witness testified: "That he heard Vaincourt tell Fowler and the other boy to always have the water ready by one; that they were water carriers and went on duty at one. . . . That the plank would shake up and down; that the boy was as big as witness; that witness went across in perfect safety; that witness doesn't know what caused the plank to turn when they went on it, but supposed the steam gushed out and they couldn't see; that witness saw Fowler with a stick, but threw it down before he went out there; that witness did not see him play in the water with a stick after he got on the plank; that witness saw him with a stick but he threw it down before he went on the plank, and didn't see him pick it up again."

The defendants, on cross-examination, elicited the same evidence as plaintiff on direct examination. There were numerous witnesses who testified that the plank was used as a walkway across the pit. We think the evidence competent, and we cannot, under the facts, hold it prejudicial. The assignment of error cannot be sustained.

The next assignment of error is to the refusal of the court below to grant motion for judgment as in case of nonsuit at the close of plaintiff's evidence and at the close of all the evidence. "On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. *Lindsey v. Lumber Co.*, 189 N. C., 119; and cases cited; *Barnes v. Utility Co.*, ante, 382." *Fleming v. Holleman*, 190 N. C., 452.

From a careful review there was abundant evidence to go to the jury to sustain plaintiff's contentions. This assignment of error cannot be sustained.

The main contention and assignment of error by defendants is to the failure of the court "to state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon," as required by C. S., 564.

In *Nichols v. Fibre Co.*, 190 N. C., 1, this Court in granting a new trial, said: "It is of course, elementary that while the jury must determine the facts from the evidence, it is both the function and duty of the judge to instruct them as to the law applicable to the facts. The

answers to the issues submitted in this case are not to be determined altogether by the facts; each issue involved matters of law, and the jury should have been instructed by the judge as to the law. While counsel may argue the law of the case to the jury, both plaintiff and defendant are entitled, as a matter of right, to have the judge declare and explain the law arising on the evidence. A failure to comply with the statute must be held as error. The error was not waived in this case by failure of defendant to request special instructions. An answer to an issue, not supported by evidence or contrary to the evidence is objectionable; an answer determined by the jury, without instructions by the judge as to the law involved, is no less objectionable. Liability for negligence arises from the application of well-settled general principles of law to the facts of specific cases; it is not to be determined solely by the jury; the judge has his function and his duty; actionable negligence is a mixed question of law and fact—no less of law, to be determined by the judge, than of fact, to be determined by the jury."

We have critically examined the charge of the court below. The court defined burden of proof and was correct as to the burden in reference to the issues submitted. The court defined actionable negligence, proximate cause and contributory negligence. We think the court complied with the statute and stated in a plain and correct manner the evidence in the case and declared and explained the law arising thereon. *Davis v. Long,* 189 N. C., 129. As to the issues of damages, the court below gave the very prayers asked for by defendants and fully sustained by the decisions of this Court.

It seems in this case, the charge of the court below and the contentions were given very favorably for the defendants. We can see no prejudicial or reversible error from the record.

No error.