EUGENE S. KNIGHT v. GERTRUDE S. FOSTER.

(Filed 22 October, 1913.)

1. Landlord and Tenant — Municipal Corporations — Cities and Towns—Sidewalks—Swinging Gates—Negligence of Landlord.

While ordinarily. the tenant and not the landlord is liable to third persons for injuries caused to them by the failure to keep the premises in repair, the liability may be extended to the owner, as in this case, for an injury caused to the plaintiff as he was passing, on a dark night, by a gate of the leased premises, which being in disrepair, swung out upon the sidewalk of a public city street, and there imbedded in the ground; this condition having existed at the time the premises were leased, and for months and years, and the owner knew of it and had promised to rectify it, at the solicitation of the tenant.

2. Landlord and Tenant — Municipal Corporations — Ordinances— Streets and Sidewalks—Swinging Gates—Negligence of Owner —Interpretation of Statutes.

A city ordinance making it unlawful for any person to have on his premises a gate that swings out upon a sidewalk of its public streets is valid, and its violation is made a misdemeanor (Revisal, 3702) ; and, when continuously violated, it may become a nuisance; and the landlord may become liable to third persons injured by reason of his failing to comply with the ordinance, for whether the property is leased before the passage of the ordinance or afterwards, it is his duty, as owner, to comply with its requirements.

WALKER, J., concurs ; BROWN, J., concurs in the concurring opinion.

APPEAL by plaintiff from *Justice, J.,* at April Term, 1913, of NEW HANOVER.

*Ricaud & Jones for plaintiff.*

*Kellum & Loughlin and John D. Bellamy & Son for defendant.*

CLARK, C. J. This is an action for damages sustained by coming in contact with a gate opening upon the sidewalk in front of certain premises in Wilmington owned by the defendant, which gate the plaintiff alleges had been left open and so long neglected, without any fastenings, that it had become permanently fixed in the sand on the sidewalk and settled at the

angle at which it stood 29 August, 1911, when the plaintiff, rightfully using said sidewalk, in which the gate had become imbedded, and in ignorance of the danger, ran into said gate on a dark and rainy night, there being no light on the street, and sustained the injuries complained of. The defendant demurred to the evidence upon the ground that the tenant and not the owner was liable if any liability existed, and moved for nonsuit. This motion was allowed.

There was evidence that the tenant was a monthly tenant, had rented the premises for seven years, and had repeatedly complained to the owner's agent of the impaired condition of the premises, but that the repairs promised him had not been made.

1 Jaggard Torts, 223, thus sums up the law: "Normally, the occupant and not the owner or landlord is liable to third persons for injuries caused by the failure to keep the premises in repair. The liability may, however, be extended to the landlord or owner—

"(*a*) When he contracts to repair.

"(*b*) Where he knowingly demises the premises in a ruinous condition or in a state of nuisance.

"(*c*) Where he authorizes a wrong."

To same effect, 5 Dillon Mun. Corp. (5 Ed.), 3028 *et seq.* There was evidence from the tenant that the owner in this case contracted to do the repairing, and had promised time and again to repair the gate. There was evidence also that the owner knew of the ruinous condition of the premises, and that the gate had been in this condition for four or five months and one of the witnesses testified that it had been in that condition for three years. We have found no case in which the landlord has been held not liable to a third person for an injury resulting from a street obstruction or a defect known to the landlord to exist at the time of the renting and permitted by him to continue.

It was in evidence that the ordinance of the city, section 40, adopted in 1902, and which is still in force, provides: "It shall be unlawful for any person to have on their premises a gate so constructed as to swing out on the sidewalk of any street or alley of the city of Wilmington, when open." This gate swung

outward, and was in that condition when the premises were first rented to the present occupant, seven years ago, which was at a date subsequent to the adoption of the ordinance. The liability for any injury resulting therefrom is necessarily upon the owner, under the second subhead above quoted from Jaggard. . Even if the ordinance had been passed subsequent to making this lease, this was a change, and not a repair, and hence the duty of making it devolved upon the owner, and not upon the tenant. In 1 Taylor Landlord and Tenant, sec. 175, it is said: "Where·injuries result to a third person from the faulty or defective construction of the premises, or from their ruinous condition at the time of the demise, or because they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord is still liable, notwithstanding the lease," citing authorities.

Besides, speaking only for myself, in the county of New Hanover the "no-fence" law has been in force for thirteen years, and in the city of Wilmington cattle and stock have been forbidden to run at large for a longer period than that. The retention of a fence and gate was therefore entirely unnecessary as a matter of law, which is further demonstrated as a matter of fact also, because this gate had been permanently left open for months and years. If, notwithstanding, the owner wished to keep up an unnecessary fence and gate, the liability for any injury resulting from its negligent condition is upon him, and not upon the tenant, who had no authority to remove them. He says he could have removed the fence and gate,. but the owner's agent kept promising to fix them. There is evidence that in that quarter these now useless gates are in a ruinous condition, sagging and hanging over the sidewalk. If this action shall call attention to this state of things and secure their removal it may prevent similar injuries and prove a public benefit.

*Biggs v. Ferrell,* 34 N. C., 1, relied on by defendant, merely holds that the owner of a ferry is not liable for damages caused by the mismanagement of the lessee in operation of the ferry, and is obviously not in point. While the authorities are not entirely in accord, the consensus seems to be that where an

KNIGHT *v.* FOSTER.

obstruction or defect in the abutting property is created and continued by the tenant, without the knowledge or sanction of the landlord during the term of tenancy, then the liability rests with the tenant; but where dilapidated premises are leased in a ruinous condition, known to the landlord, and such condition causes the use of public highways and thoroughfares in populous cities to become unsafe and insecure, and the landlord knows of the conditions and suffers them to continue, both the landlord and tenant are tort feasors, and may be sued jointly or severally. *Ahern v. Steele,* 115 N. Y., 202, is an instructive case in which the authorities as to the liability of landlord and tenant to third parties are collected and differentiated. It is there held, citing Wood's Landlord and Tenant, 230, "If a nuisance existed upon the premises at the time of the demise, the landlord as well as the tenant is liable for the damages resulting therefrom." The ordinance prohibiting gates from swinging outward was held reasonable and within the domain of municipal regulations. *Rosedale v. Hanner,* 157 Ind., 390. Under Revisal, 3702, the violation of a city ordinance is a misdemeanor. A continued violation of a valid ordinance is a nuisance.

We need not consider the exceptions to evidence, because they may not arise upon another trial. The judgment of nonsuit is
        Reversed.

WALKER, J., concurring: I concur in all that is decided by the opinion of the Court. I do not assent to the proposition that the "no-fence law" has any application to the case. It was intended to fence in cattle, it is true, and not to fence them out, but it still leaves it optional with the owner of land whether he will fence his premises for their protection or other purposes than barring out straying cattle, and does not increase his responsibility for doing so. There are other roving animals than cattle, and he has the right to keep them out and to erect fences for privacy, or for ornamentation, as much so as he may plant trees for that purpose or erect structures for his comfort and convenience.

BROWN, J., concurs in this opinion.