R. F. BOYD, ADMINISTRATOR OF VIOLET OVERCASH, DECEASED, v. ATLANTA AND CHARLOTTE AIRLINE RAILWAY COMPANY, SOUTHERN RAILWAY COMPANY, CRAMERTON MILLS, INC., AND DUKE POWER COMPANY.

(Filed 21 November, 1934.)

**Negligence A c—Doctrine of attractive nuisance held not applicable to facts alleged in complaint in this action.**

Plaintiff's intestate, a child eight years old, went upon a railroad bridge, and while throwing small stones from the tracks on the bridge into the water fifty feet below, lost her balance and fell into the deep water and drowned. The railroad bridge spanned water ponded by a dam to a great depth, and the bridge was near houses in which many children lived, including plaintiff's intestate. One of defendants had constructed the dam which so ponded the water; one of defendants owned the houses and permitted and consented to the ponding of the water in the vicinity of its houses; and the other defendants were the owner and lessee of the railroad bridge, which had been constructed without guard rails. On the bridge there was a raised section of concrete thirty-six inches wide which plaintiff alleged was used as a walkway by the public generally to the knowledge of defendants. Plaintiff sought to recover for intestate's death on the theory that the condition existing at the place of the accident constituted an attractive nuisance, and that defendants knew or should have known that children, including the intestate, would be attracted to the place to their death: *Held*, defendants' demurrer to the complaint on the ground that it failed to state a cause of action was properly allowed, the doctrine of attractive nuisance not applying to the facts alleged in the complaint.

CLARKSON and SCHENCK, JJ., concur in result.

APPEAL by plaintiff from *Stack, J.,* at March Term, 1934, of MECKLENBURG. Affirmed.

This is an action to recover damages for the death of plaintiff's intestate.

The plaintiff is the duly qualified administrator of Violet Overcash, who died in Gaston County, North Carolina, on 16 June, 1929.

This action was begun in the Superior Court of Mecklenburg County within one year after the death of plaintiff's intestate.

The allegations of the complaint on which the plaintiff seeks to recover in this action are as follows:

"19. That on 16 June, 1929, Violet Overcash, a child less than eight years of age, in company with another girl of about the same age, left her home in the town of Cramerton, where her father lived, in a house belonging to the defendant Cramerton Mills, Incorporated, and wandered away to and got upon the south, or west, end of the railway bridge belonging to the Atlanta and Charlotte Airline Railway Company, as owner, and to the Southern Railway Company, as lessee, which said bridge spans the South Fork of the Catawba River, as hereinbefore mentioned, said bridge having no guard rails, fence, or other equipment along the side thereof; and said children continued to walk along and over said railway bridge until they had reached a point near the center thereof.

"20. That when Violet Overcash and her companion had reached a point near the center of said bridge they began to look at, and gaze upon, the broad expanse of water stretching away on both sides of said bridge, and Violet Overcash and her companion began throwing into the water far below, to see it splash, the small crushed stone used for ballast by the defendants Atlanta and Charlotte Airline Railway Company and the Southern Railway Company, and each of them.

"21. That while Violet Overcash and her companion were about their childish play, and while attempting to throw the small pieces of crushed stone into the water beneath the bridge, as hereinbefore described, the said Violet Overcash lost her balance, stumbled and fell from the top and over the edge of said railway bridge, a distance of 45 or 50 feet, into the waters beneath thereof, and was drowned. That for a period of many hours thereafter vain attempts were made to recover her body, so deep was the water into which she fell.

"22. That the death of plaintiff's intestate, Violet Overcash, was the direct and proximate result of the wilful, wanton, and negligent acts and gross carelessness of the defendants, and was due solely, brought about, and caused by the joint and concurrent negligent acts and omissions of the defendants, and each of them.

"(a) In that the defendant Duke Power Company built and constructed, or owns and controls, the dam across the South Fork of the Catawba River, which said dam serves no purpose whatsoever in generating electric current for said defendant, nor was it intended so to do, and dammed, backed up, and impounded the waters of the South Fork of the Catawba River, along the channel of said stream, and far out over the lands adjacent thereto, and upon, over, and across the lands

belonging to the Cramerton Mills, Incorporated, and upon, over, and across the lands and right of way of the defendants Atlanta and Charlotte Airline Railway Company, as owner, and of the Southern Railway Company, as lessee, said water so dammed, backed up, and impounded being in varying depths, and having a maximum depth of eighteen or twenty feet, and said waters are near by and in close proximity to and within a few feet of the dwelling-houses belonging to the defendant Cramerton Mills, Incorporated, and in which a great many of the operatives of said manufacturing plant live, and did live on the date hereinbefore mentioned;

"(b) That the Duke Power Company, at all times herein mentioned, maintained said dam as hereinbefore alleged, well knowing that said waters of the South Fork of the Catawba River were backed up to and near, and within a few feet of, many of the homes of the operatives of the Cramerton Mills, Incorporated, and when it knew, or by the exercise of ordinary care and observation upon its part could have known, and did know, that in a great many of said homes there were children of tender years, and who were totally lacking as to a sense of the danger connected with said waters, and well knowing at all times that to go in and play about waters of the kind and character herein mentioned was a weakness of a child's mind;

"(c) That the defendant Duke Power Company backed up and impounded the waters of the South Fork of the Catawba River upon, over, and across the lands and right of way of the Atlanta and Charlotte Airline Railway Company, as owner, and of the Southern Railway Company, as lessee, and underneath the bridge supporting the tracks of said defendant, when it knew, or by the exercise of ordinary care, caution, observation, and prudence upon its part could have known, and did know, that many of the children in the town of Cramerton, and especially those nearby, would be attracted to, play about, on, over, and upon the bridge belonging to said railway defendants herein mentioned, and when it knew that there was nothing more attractive to a child's mind than just such a scene as is viewed from the top of said bridge;

"(d) That the Duke Power Company maintained said dam and backed up and impounded the waters of the South Fork of the Catawba River to a great depth over and across the right of way, and underneath the bridge belonging to the Atlanta and Charlotte Airline Railway Company, as owner, and to the Southern Railway Company, as lessee, when it knew, or by the exercise of ordinary care, caution, observation, and prudence could have known, and did know, that there were many homes in which there were children of tender years near and in close proximity to said bridge belonging to the railway defendants herein mentioned, and that said bridge had no guard rails, fence, or other means to prevent

children that might wander upon said bridge from falling from said bridge and into the waters beneath thereof, and being drowned, in the way and manner in which plaintiff's intestate was in fact drowned, and when said defendant knew, or by the exercise of ordinary care, caution, and prudence upon its part could have known, and did know, that said railway bridge, in its unguarded condition, and the waters beneath thereof, was such an attractive place as to invite and cause small children to go upon said bridge and be and become a place of great hazard and danger;

"(e) That the defendant Cramerton Mills, Incorporated, permitted the Duke Power Company to dam, impound, back up, and overflow its said lands adjacent to and nearby its said mill village, and said waters so backed up and impounded was done with its full knowledge, consent, and approval, and more especially did said defendant permit said Duke Power Company to dam, back up, and impound said waters upon its premises, at and near the railway bridge belonging to the Atlanta and Charlotte Airline Railway Company, as owner, and to the Southern Railway Company, as lessee, and nearby and in close proximity to the homes of its operatives, wherein were many children of tender years, when it knew, or by the exercise of ordinary care, caution, and prudence upon its part could have known, and did know, that said waters so backed up and impounded were dangerous to the life and limb not only of plaintiff's intestate but to the other children of said town of Cramerton as well;

"(f) That the defendant Cramerton Mills, Incorporated, permitted the Duke Power Company to dam, back up, and impound the waters of the South Fork of the Catawba River, across and over its said premises, and near to and under the railway bridge hereinbefore mentioned, when it knew that many of its houses, occupied by its operatives and their families, were near and in close proximity to the south, or west, end of said railway bridge, and when it knew, or by the exercise of ordinary care, caution, and prudence upon its part could have known, and did know, that there were no guard rails, fence, or other means to prevent children of tender years from going upon said bridge and falling therefrom, in the way and manner in which plaintiff's intestate did go upon said bridge and fell therefrom, and when it knew, or by the exercise of ordinary care and prudence could have known, that said railway bridge so located, and the waters beneath thereof constituted such a place as would attract children of tender years;

"(g) That the defendants Atlanta and Charlotte Airline Railway Company, as owner, and the Southern Railway Company, as lessee, permitted the Duke Power Company to dam, back up, and impound the waters of the South Fork of the Catawba River, over, across, and

upon its lands and right of way, and underneath the bridge supporting their railway lines, to a great depth, in, near, and adjacent to the town of Cramerton, and near the homes of the residents thereof, when they, and each of them, knew, or by the exercise of ordinary care, caution, and prudence upon their part could have known, and did know, that in said homes there were many children of tender years;

"(h) That the defendants Atlanta and Charlotte Airline Railway Company, as owner, and the Southern Railway Company, as lessee, built and constructed, or caused to be built and constructed, said railway bridge across and over the South Fork of the Catawba River at, near, and adjacent to the town of Cramerton, and the south, or west, end of said bridge was nearby and in close proximity to the homes of many of the residents of said town, and said bridge so built and constructed was forty or fifty feet above the waters underneath thereof, and on each side of said bridge was a raised section of concrete, about thirty-six inches in width, which was used as a walkway by the public in general in passing to and from the town of Cramerton to and from the Eagle Mills, and the town of Belmont, Gaston County, North Carolina, which the defendants, and each of them, well knew, or by the exercise of ordinary care, caution, and prudence upon their part could have known, and this plaintiff is informed, believes, and alleges that said sections were so used with the full knowledge, consent, and approval of said defendants, and each of them;

"(i) That the defendants Atlanta and Charlotte Airline Railway Company, as owner, and the Southern Railway Company, as lessee, on the date hereinbefore mentioned had no guard rails, fence, or other equipment along the concrete sections, or walkways, which were located on each side of said bridge, to prevent anyone who might go upon said bridge from falling therefrom and into the waters below, when they, and each of them, knew, or by the exercise of ordinary care, caution, and prudence upon their part could have known, and did know, that owing to the closeness of said bridge to many of the homes in the town of Cramerton, and in which children of tender years lived, that said children would go upon and play about said bridge, and when they knew, or by the exercise of ordinary care, caution, and prudence upon their part could have known, that said children going upon and playing about said bridge might and would fall therefrom and be killed, in the way and manner in which plaintiff's intestate in fact was killed;

"(j) That the defendants Atlanta and Charlotte Airline Railway Company, as owner, and the Southern Railway Company, as lessee, owned and maintained said bridge hereinbefore mentioned without any guard rails, fence, or other equipment along the edges or sides thereof, when they, and each of them, knew, or by the exercise of ordinary care,

caution, and prudence upon their part could have known, and did know, that owing to the view from the top of said railway bridge, and the broad expanse of water surrounding same, that the children in the homes hereinbefore mentioned would be attracted thereto and thereon, and would throw, or attempt to throw, the small crushed stones into the waters beneath, and that said children, in attempting to throw said stones, might and would fall into said waters and be drowned, in the way and manner in which plaintiff's intestate fell from said bridge and was drowned, and when they knew that said railway bridge, in its unguarded condition, was dangerous and hazardous, and was a veritable death-trap for any child or children that might wander upon or be attracted to said bridge."

Each of the defendants filed an answer to the complaint, in which all the allegations therein relied on by the plaintiff as stating facts sufficient to constitute a cause of action against the defendants, or either of them, are denied.

After the action was called for trial but before a jury was impaneled, each of the defendants demurred *ore tenus* to the complaint on the ground that the facts stated therein are not sufficient to constitute a cause of action against the defendants, or either of them. The demurrers were sustained, and the plaintiff duly excepted.

From judgment dismissing the action the plaintiff appealed to the Supreme Court, assigning as errors the rulings of the court upon the demurrers, and the judgment dismissing the action in accordance with such rulings.

*M. L. Ritch, J. C. Newell, and H. L. Taylor for plaintiff.*

*John M. Robinson and Hunter M. Jones for defendants Atlanta and Charlotte Airline Railway Company and Southern Railway Company.*

*Cansler & Cansler for defendant Cramerton Mills, Inc.*

*W. S. O'B. Robinson and W. B. McGuire, Jr., for defendant Duke Power Company.*

Connor, J. The plaintiff on his appeal to this Court contends that on the facts alleged in the complaint, and admitted by the demurrers, the defendants, and each of them, are liable to the plaintiff for the damages which he has suffered by the death of his intestate on the principle which was announced and applied by the Supreme Court of the United States in the *Turntable* case (*R. R. v. Stout*, 21 L. Ed., 745), and that for this reason the judgment dismissing the action should be reversed. This contention cannot be sustained. There was no error in the ruling of the court sustaining the demurrers, or in the judgment dismissing the action in accordance with such ruling.

The principle on which the *Turntable case, supra,* was decided was recognized by this Court as sound in *Kramer v. R. R.,* 127 N. C., 328, 37 S. E., 468. It was held, however, that the principle was not applicable to the facts shown by the evidence in that case, for that the crossties by which the plaintiff was injured were not piled on the land of the defendant, but on a street on which the land of the defendant abutted. It is said in the opinion in that case that "the principle announced in the *Turntable case, supra,* would not apply if the ties had been carelessly piled on the defendant's premises. The *Turntable* decisions are necessarily based either on the idea that such machinery has such peculiar attractiveness for children as objects of play that when left unlocked there is an implied invitation to use them, or when not properly guarded it is so obviously dangerous to children as to call for diligence in the owner to take precautions against the dangers. Those cases are exceptions to the general doctrine, and went to the very limit of the law. Mere attractiveness of premises to children will not bring a case within that exceptional doctrine. Indeed, the plaintiff's counsel, in his argument here, stated that he did not contend for the application to this case of the principle laid down in the *Turntable case, supra.*"

The soundness of the principle was conceded and its application in proper cases was approved in *Briscoe v. Lighting and Power Company,* 148 N. C., 396, 62 S. E., 600. However, it was held by this Court that the principle was not applicable in that case. It is said in the opinion that "it must be conceded that the liability for injuries to children sustained by reason of dangerous conditions on one's premises is recognized and enforced in cases in which no such liability accrues to adults. This we think sound in principle and humane in policy. We think the law is sustained upon the theory that the infant who enters upon premises, having no legal right to do so, either by permission, invitation, or license, or relation to the premises or its owner, is as essentially a trespasser as an adult; but if to gratify a childish curiosity or in obedience to a childish propensity excited by the character of the structure or other conditions he goes thereon and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, he is liable for such injuries, provided the facts are such as to impose the duty of anticipation or prevision; that is, whether under all the circumstances he should have contemplated that children would be attracted or allured to go upon his premises and sustain injury." It is further said in the opinion that "to allege simply that the machinery, including dynamos, engines, etc., in an attractive building in the populous portion of a city 'is calculated to attract and allure boys and others to see the machinery' does not bring the case within the exception to the general principle. There is no suggestion that any boys had been at-

tracted or allured, nor is it even averred that the plaintiff was on the premises to see the machinery." In that case it was held that the demurrer to the complaint should have been sustained.

A judgment of nonsuit was reversed in *Starling v. Cotton Mills,* 168 N. C., 229, 84 S. E., 388. In that case the plaintiff's intestate, a boy six years of age, fell into a reservoir on the defendant's premises, and was drowned. The defendant had caused a fence to be constructed around the reservoir, but had failed to keep the fence in repair. Plaintiff's intestate crawled through a hole in the fence and fell into the reservoir. There was evidence tending to show that plaintiff's intestate and other children had been accustomed to play about the reservoir, and that the defendant knew of this custom, and because of this custom had caused the fence to be erected for the protection of the children. In the opinion in that case it is said: "It does not admit of debate that the fact that such a dangerous place was unguarded by a secure fence, where children of that age were allowed to play, was culpable negligence on the part of the officers of the defendant. The very fact that a fence had been put up of itself shows that these authorities were aware of the danger. To permit it to become dilapidated was negligence."

In *Comer v. Winston-Salem,* 178 N. C., 383, 100 S. E., 619, it is said: "In this case the city was responsible for not maintaining an efficient railing, which would have prevented this child from getting through and falling twenty feet below upon the concrete bottom of the extension of the culvert. A small mesh, strong wire fence would have prevented such danger as this, and would have saved the life of the little one whose death was caused by leaning over the railing, or getting through it, to look at the gurgling, many-hued ripplings of the stream below." A judgment for the plaintiff was affirmed.

The instant case is governed by the law as stated in *Kramer v. R. R., supra,* and in *Briscoe v. Lighting and Power Company, supra.* The facts alleged in the complaint and admitted by the demurrers do not bring this case within the class of cases which is governed by *Starling v. Cotton Mills, supra,* and *Comer v. Winston-Salem, supra.*

The "attractive nuisance doctrine," which is invoked by the plaintiff in this case, has been repudiated by a majority of the courts. In those courts in which the doctrine is recognized, it is said that "it needs very careful statement not to make an unjust and impracticable requirement." See *Lucas v. Hammond,* 150 Miss., 369, 116 So., 536, 60 A. L. R., 1427.

The judgment is
Affirmed.

CLARKSON and SCHENCK, JJ., concur in result.