HANNAH BRANNON, ADMINISTRATRIX OF THE ESTATES OF EDWARD AND
   TOMMY BRANNON, DECEASED, v. J. H. SPRINKLE, JOHN A.
   SPRINKLE, ETHEL G. SPRINKLE, ELSIE S. LEAKE, AND H. H.
   LEAKE.

(Filed 21 November, 1934.)

1. **Negligence A c—Evidence held sufficient for jury upon doctrine of attractive nuisance.**

   Allegation and evidence to the effect that defendants owned a certain lot of land for a number of years prior to the injury in suit, that upon the land was a deep reservoir twelve feet in diameter which was filled with water to within about two feet from the top, that the reservoir was unfenced and unprotected and had been allowed to remain in this condition for a number of years, and that the reservoir was discernible from the sidewalk on the day the property was bought by defendants, one of them being present, that there were paths across the property near the well which had been used by the public generally and that for a number of years children in the neighborhood had played around the reservoir, catching tadpoles and playing in the water, and that plaintiff's intestates, children four and seven years of age, had gone upon the property and were fishing in the reservoir for tadpoles, and fell in the reservoir and drowned, *is held* sufficient to take the case to the jury on the issue of defendants' actionable negligence, the allegation and evidence tending to show an alluring and attractive place to small children, existing upon the land to the knowledge of defendants, and that defendants had actual or constructive knowledge that the place was frequented by children of tender years, and failed to exercise due care to guard against the foreseeable dangers to children attracted to the premises, and that the deaths of plaintiff's intestates were proximately caused by such failure.

2. **Trial D a—**

   Only the evidence favorable to plaintiff need be considered in passing upon the sufficiency of the evidence to be submitted to the jury upon defendants' motion as of nonsuit.

3. **Negligence A c—Application of doctrine of attractive nuisance.**

   While a child who goes upon lands without legal right by permission, invitation, license, or relation to the premises or its owner is as much a trespasser as an adult, a child cannot be held to the same degree of care for its own safety, and where an owner permits a dangerous and exposed place, which is alluring and attractive to small children, to exist and remain unguarded on his lands, and has actual or constructive notice that small children habitually play at or near such place, so that their presence there and injury to them could be anticipated, the owner may be held liable for injury resulting from his failure to properly guard against such dangers.

4. **Negligence D d—**

   Where but one inference can be drawn from the evidence as to the proximate cause of the injury in suit, a new trial will not be awarded for the court's failure to charge the jury upon the question.

5. Appeal and Error. J e—

Where but one inference can be drawn from the evidence, a new trial will not be granted for error in the charge of the trial court upon appeal from a verdict in accordance with the evidence.

BROGDEN, J., concurs in result.

CONNOR, J., dissenting.

APPEAL by defendants from *Hill, Special Judge,* at February Term, 1934, of FORSYTH. No error.

There were consolidated for the purpose of trial two cases, the plaintiff in each being the same person, the mother and the administratrix of her infant child, the intestate in the respective cases being Edward Brannon, aged four years, and Tommy Brannon, aged seven years, and the defendants in each case being the same.

Upon the plaintiff resting her case, the defendants moved the court to dismiss the action and for a judgment as of nonsuit, and upon denial thereof noted objection and reserved exception, and upon the close of all the evidence the defendants renewed their motion theretofore made, which was again denied, and objection and exception again noted and reserved.

It is admitted that the plaintiff is the duly qualified administratrix of her deceased children, Edward and Tommy Brannon, and that the defendants, at the time alleged as well as before and after, were the owners of the land described in the complaint, located on Northwest Boulevard, in a populous section of the city of Winston-Salem. It is also not controverted that the intestates were drowned in a well or reservoir on said land on 30 May, 1931.

These actions are instituted for the alleged wrongful death of said infant children, the intestates.

From judgment in favor of the plaintiff the defendants appealed, assigning errors.

*J. O. Wagoner, R. M. Weaver, and Richmond Rucker for appellee.*
*W. Reade Johnson for appellants.*

SCHENCK, J. The determinative question in this case, which is raised by the exception to the denial of the motion for a judgment as of nonsuit, is whether there was sufficient evidence of actionable negligence, as alleged in the complaint, to be submitted to the jury.

The plaintiff alleges, *inter alia,* "That upon the property described, . . . the defendants did, on 30 May, 1931, and for a great while previous thereto, maintain and allow to remain in an unprotected, exposed, and unfenced condition a brick well which was some fifty feet,

more or less, deep; was of square dimensions, the opening of which was about twelve feet in diameter at the top; that stagnant water had been allowed to accumulate in said well to a depth of forty-seven or forty-eight feet, reaching to within approximately two feet of the top of said well, and vegetation had grown up from the walls and water, and trash and leaves had been allowed to accumulate on the surface of the said water in such a manner as to conceal and camouflage the true depth of said well. That for more than twenty years the public has used several footpaths which converged into one path at a point adjacent to and by the side of said well, and the use of these footpaths was permitted and acquiesced in and allowed by the defendants and their predecessors in title to said property; and the defendants knew or should have known that the said well constituted a highly dangerous condition, not only to those who were using the said path but to all who might come upon said property; that the defendants knew, or should have known, that children of immature years frequently used the said paths and had been allowed by these defendants . . . to frequent the vicinity and the property upon which the said well was situated; that children of tender years were permitted and have been accustomed to playing around said well, fishing for tadpoles and engaging in other childish sports. That on or about 30 May, 1931, the plaintiff's intestate, an infant child four years of age, while using the said path, or while present in the vicinity of said well, being attracted by the unusual and dangerous condition, and in order to satisfy his childish curiosity, was tempted to the well, fell into the stagnant water which had accumulated and was drowned. That the negligence of the defendants in permitting the maintenance of the deep well or cistern in a densely populated section of the city without guard or barrier, in close proximity to a public thoroughfare and footpaths, when they knew, or by the exercise of ordinary care should have known, that small children in the vicinity, including this intestate, would likely be attracted to the well or water pit which apparently afforded a place of recreation but in fact constituted a dangerous and hazardous condition, constituted a constituent element of the proximate cause of the injuries sustained by the plaintiff's intestate."

The foregoing excerpts are from the complaint wherein Edward Brannon is the intestate, and the complaint wherein Tommy Brannon is the intestate is identical, except it is alleged that he was seven years of age.

These allegations, with the admitted facts, clearly state a cause of action, and if they are supported by any evidence the court correctly submitted the case to the jury.

John Moore, a ten-year-old boy, told a tragic story, with childlike simplicity, in these words: "I was down there where they were the

morning that they died. We were trying to catch tadpoles. There were no other children there with us that morning except my brother, and he is dead now. I saw Tommie and Edward when they fell in the hole. The little one fell in first. He was fishing for tadpoles with a tin can. When the little one fell in the big one jumped and tried to catch him. I didn't do anything. Didn't any people come there. The fire people got them out of the hole. We could reach the water with the can. . . . There wasn't any top on the place where they fell in. . . . The brick wall was wide and had a flat top to it. It wasn't necessary to get up on the wall to fish for tadpoles, but you could reach over it. Tommie Brannon did not climb up on the wall, but Edward, the four-year-old one, did climb up on the wall and was fishing with a can, and fell in. Then Tommie jumped in. He didn't have a string on the can, but had it in his hand."

Hannah Brannon, the mother, testified that she ran to the scene and jumped in the hole in which she was told her children had fallen; that the water was deeper than she was, because she went under and could not find bottom, and that she was unable to get out until somebody pulled her out. That she couldn't do anything to help her children. That Edward was four years old and Tommy was seven.

J. L. Snyder testified, in effect, that he was a member of the fire department of Winston-Salem, and that his company reached the scene about thirty minutes after the children were drowned, and that the firemen devised means to get the children out by laying two ladders across the well. That the water in the hole was about two and a half feet from the top of the wall, and the wall was about two and a half feet high, so the water came up about to the top of the ground; that on the south side the wall was about even with the ground, and the slope of the ground tapered up the wall, the ground being a little sloping and the wall level; that the wall around the hole was about two and a half or three feet above the ground on the north side, eighteen feet square, and made of brick. It was ninety-four feet from the center of the sidewalk on Northwest Boulevard, on the south side of the property, to the center of the hole.

Peter Hogan testified substantially that he had known this property thirty-five years or longer. That when he first became acquainted with it the city had it in charge and used it for a pump-house, and later on the city sold it. That this well was used once as a help for the reservoir the city had on the far side of the creek, and that water was pumped from it through a pipe to the reservoir over there and then to the larger reservoir up town. That there was a path that came down the bank and went by on the west side of this brick structure, within some four or five feet of it. That the path led on out across the branch and on up across

the hill, and that grown people and children all came across the property on this path; that there were two paths, one led to "Pittsburgh" and the other led to the Old Town Road and then into Cherry Street. That he lived at the top of the hill on Cherry Street and could see this property from his house. That there are other houses there and a school a good piece up Cherry Street. That children going to school came through this lot where the hole is. There is a church on Cherry Street and people going to church came across that lot. That he had seen children playing ball and one thing and another down in that bottom, seen them down there often. They had a little flat on yon side of the well, between there and the branch, had a nice little place there where they would play ball; and then they played sometime down below there further in the meadow place.

Celia Harrington's testimony in chief, as set forth in the record, is as follows: "I lived down on Northwest Boulevard on 30 May, 1931, just angling across the street from the hole; I could see it from my porch. I had lived there about six years, and during that time have observed children playing around this place; that was their playground and they played there, catching tadpoles and having old tin cans, bending over the bricks, fishing along in the water and messing around in there. On the day of this accident you could see this place from the street along there, for they had plowed up all around on this side and fixed to tend there. I remember when they had the auction sale out there. At that time this property was cleaned off; that spring they cleaned off all the bank clean on down and hauled all the brush and rubbish and stuff out on the creek and burned it up. Then they put up white posts with figures on them down by the side of the street. That was all done before the sale; they had it cleaned off nice. On the day of the sale the grounds were cleaned off. There were right many people there on the day of the sale."

Clifford Conrad testified that he had known "this place for eleven years, and had seen tadpoles in the water in the hole" and had "seen children playing around the place."

R. C. Rights and W. A. Pegram testified in effect that the well or reservoir was made by constructing brick walls around a spring; and that it formerly had a cover over it "just like an ice house," and later when this was torn away a fence was built around it to keep the cattle out, but the fence, too, had disappeared before the children were drowned.

E. C. Reese testified that in October, 1928, he assisted the auction company in conducting the sale of the property on Northwest Boulevard, and that only nine or ten lots were sold at that time. That he saw Mr. Sprinkle, the defendant, on the ground that day attending the sale.

At the time of the sale the entire property had been cleaned off and the weeds and underbrush on the property had been mowed. That he saw this well or hole there on the day of the sale, and that the hole and the water in it could be seen from the street and sidewalk. That the auctioneers were on a wagon or truck in the street and the crowd was gathered on the sidewalk and around the truck. That he didn't know the exact lot Mr. Sprinkle was on, but he thought it was the second lot sold; he was either on the first or second lot, or on the sidewalk.

There was evidence in conflict with the foregoing, more particularly tending to show that the defendants had no knowledge of the existence of any well or reservoir upon the land owned by them, or that children used the land as a playground, but since only evidence favorable to the plaintiff is considered on a motion for nonsuit, we do not set forth the defendants' evidence. *Fowler v. Fibre Co.*, 191 N. C., 42.

We think there is both *allegata* and *probata* of an alluring and attractive place to small children; of knowledge by defendants of such place; of further knowledge, active or constructive, by defendants of such place being used by children of tender years as a place to play, fish, and catch tadpoles; of failure by defendants to exercise due care to guard against the foreseeable danger of such place; and of the death of the intestates being proximately caused by such failure.

The law is stated in *Briscoe v. Lighting and Power Co.*, 148 N. C., 396 (411), where *Connor, J.*, writing with much force and clarity, says: "It must be conceded that the liability for injuries to children sustained by reason of dangerous conditions on one's premises is recognized and enforced in cases in which no such liability accrues to adults. This we think sound in principle and humane in policy. We have no disposition to deny it or to place unreasonable restrictions upon it. We think that the law is sustained upon the theory that the infant who enters upon premises, having no legal right to do so, either by permission, invitation, or license, or relation to the premises or its owner, is as essentially a trespasser as an adult; but if, to gratify a childish curiosity, or in obedience to a childish propensity excited by the character of the structure or other conditions, he goes thereon and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, he is liable for such injuries, *provided the facts are such as to impose the duty of anticipation or prevision;* that is, whether under all of the circumstances he should have contemplated that children would be attracted or allured to go upon his premises and sustain injury. The principle is well stated in 21 A. and E., 473, and was cited with approval in *McGhee's case, supra* (147 N. C., 142). 'A party's liability to trespassers depends upon the former's contemplation of the likelihood of their presence on the premises and the probability of injuries from

contact with conditions existing thereon.' Immediately following this language the editor says: 'The doctrine that the owner of premises may be liable in negligence to trespassers whose presence on the premises was either known or might reasonably have been anticipated is well applied in the rule of numerous cases, that one who maintains dangerous implements or appliances or unenclosed premises of a nature likely to attract children in play, or permits dangerous conditions to exist thereon is liable to a child who is so injured, though a trespasser at the time when the injuries are received; and, *with stronger reason, when the presence of a child trespasser* is actually known to a party, or when such presence *would have been known had reasonable care been exercised.'*" (Italics ours.)

*Mr. Justice Walker,* in *Ferrell v. Dixie Cotton Mills,* 157 N. C., 528, in an able and exhaustive opinion, clearly points out the difference in the rule of liability of one who maintains or permits a dangerous instrumentality or situation on his premises to a trespasser of mature age and to a trespasser of tender years. He writes: "The negligence charged against the defendant is the maintaining by it of a highly dangerous and deadly condition and instrumentality on premises which were unenclosed, and which were in an attractive place to children, and on which defendant knew, or by the exercise of reasonable care ought to have known, that small children were accustomed to play. There was ample evidence to sustain this allegation. The contention of the appellant is that the child was a trespasser, to whom it owed no duty except to refrain from wilfully injuring it. If the injury had been to a person of such mature age that he could appreciate the nature of his acts and the dangers attached to the situation, we would agree with this contention. But when, as in this case, the injury is suffered by a six-year-old boy, under such circumstances and surrounding conditions as the evidence showed to exist, a different rule of law governs the conduct and liability of the defendant. What did this six-year-old boy know about the dangers of electricity? What could he possibly have known about the rules of property and the laws of trespass? Technically, he may have been a trespasser on defendant's land, but all he knew about it was that it was an attractive place to play, and that it was where he and the other little children of the neighborhood were accustomed to play, and had been playing for months past. The defendants knew, or ought to have known, that this pole with the loose guy wire attached to it was an instrument of death, which might become effective to anyone who came in contact with it. The defendant also knew, or ought to have known, that the children were in the habit of playing about this pole, and, that they were also in the habit of swinging on the loose guy wire. Under these circumstances, the law will not permit the defendant to allege a technical trespass and thereby shield itself from the consequences

of its negligence, resulting in the death of the son of the plaintiff. The doctrine of the 'turntable cases' was first before this Court in the case of *Kramer v. R. R.*, 127 N. C., 328. There the nine-year-old son of plaintiff was killed by climbing upon a pile of crossties negligently stacked by defendant in an unused portion of one of the streets of the town of Marion. The Court held that plaintiff's son was not a trespasser; but it further says: 'If he was too young to be bound by any rule as to contributory negligence and had a habit of playing, with other boys, on the crossties with the knowledge of defendant, and without the defendant's attempting to prevent such sport or to take precaution against injury to the children, then the defendant was negligent. In such a case the defendant's negligence would not consist in piling the crossties in the street, but it would consist in its failure to guard against injury to the children, after it had learned of their habit of playing on the ties, and its failing to provide against their injury.' "

The opinion in *Ferrell v. Cotton Mills, supra,* continues: "In *Brown v. Salt Lake City*, 93 Pac., 570, an eight-year-old boy was drowned in a conduit situated near a schoolhouse. Entrance to the conduit was barred up, but one of the bars had been broken for a year or more, and children had played in and about it for several years, and its condition had been brought to the notice of the city authorities. The Court says: 'We are constrained to hold, therefore, that the doctrine of the turntable cases should be applied to all things that are uncommon and are artificially produced, and which are attractive and alluring to children of immature judgment and discretion, and are inherently dangerous, and where it is practical to guard them without serious inconvenience and without great expense to the owner.' In *Price v. Water Co.*, 50 Pac., 450, an eleven-year-old boy was drowned in defendant's reservoir. The reservoir was fenced, but there was a kind of stile over the fence, and defendant had knowledge that boys played about the reservoir, fishing and indulging in other sports. The Court says: 'To maintain upon one's property enticements to the ignorant or unwary is tantamount to an invitation to visit and to inspect and to enjoy, and in such case the obligation to endeavor to protect from dangers of the seductive instrument or place follows just as though the invitation had been express. . . . It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with meat so that his neighbor's dog attracted by his natural instincts might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong might thereby be killed or maimed for life. Such is not law.' "

BRANNON *v.* SPRINKLE.

The original "turntable case" (*Sioux City and Pacific R. R. Co., Plff. in Err., v. Stout, by his next friend,* 17 Wall., 657), decided by the Supreme Court of the United States in 1874, has much in common with the instant case. There, as here, the case was presented on a motion for nonsuit, and the question was whether the evidence introduced was sufficient to be submitted to the jury upon the issue of the actionable negligence of the railroad company. There was evidence tending to show that the railroad company had a turntable, by which a much-used path led, and upon which children were known by the railroad company to play, and that the turntable had no lock or latch to make it stationary when not in use, and that the plaintiff, then a mere lad between six and seven years old, while playing thereon had his foot crushed when the turntable moved. The Court said: "It is well settled that the conduct of an infant of tender years is not to be judged by the same rule which governs that of an adult. While it is the general rule in regard to an adult, that to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case." After disposing of the issue as to any negligence on the part of the plaintiff, the Court propounds the question: "Was there negligence on the part of the railway company in the management or condition of its turntable?" and makes answer as follows: "To express it affirmatively, if from the evidence given it might justly be inferred by the jury that the defendant, in the construction, location, management, or condition of its machine had omitted that care and attention to prevent the occurrence of accidents which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff."

In view of the evidence tending to show that the defendants, by the exercise of reasonable care, could have known that there was no cover over or fence or guard around the well or reservoir, and that small children frequently used the paths in very close proximity thereto, and were in the habit of playing around and fishing and catching tadpoles therein, we are of the opinion that there is sufficient evidence "to impose the duty of anticipation or prevision" upon the defendants; and, in consonance with the legal principles by which individuals are held liable for their negligent acts, we think the jury was properly allowed to pass upon the issue as to whether these defendants had breached a duty owed to these plaintiffs to use due care under the circumstances to prevent the well or reservoir on their premises from getting and remaining in a condition which was dangerous, and such as was likely to attract children of tender years. We therefore conclude that there was no error in denying the defendants' motion for judgment as of nonsuit.

There are a number of exceptions taken to the charge of the court, the most serious of which is "that his Honor failed to charge the jury that it would be necessary for them to go further and find that the negligence outlined . . . was the proximate cause of the . . . death of the plaintiff's intestates." There could be drawn from the evidence but one inference as to the proximate cause of the intestates' deaths, namely, drowning in the well or reservoir on the defendants' land. Where, from all the evidence before the court, the jury can draw but one inference, a new trial will not be granted on account of error in the charge of the trial judge. *Credit Co. v. Teeter,* 196 N. C., 232. Since the risk of the deaths of the intestates was one of the very factors which made the defendants' conduct negligent, there was really no problem of legal causation.

We think the other exceptions taken to the charge are untenable; and, upon an examination of the objections taken to the admission and exclusion of evidence, we think they were properly overruled.

We find in the record

No error.

BROGDEN, J., concurs in result.

CONNOR, J., dissenting: I think that the refusal of the court at the trial of this action to allow the defendants' motion, at the close of all the evidence, for judgment as of nonsuit was error. For this reason I cannot concur in the decision of the Court that there was no error in the trial. I think that the judgment should be reversed, and that the action of the plaintiff to recover damages for the death of her intestates should be dismissed.

There was no evidence at the trial tending to show that the well on the land owned by the defendants, in which the plaintiff's intestates were drowned, was an "attractive nuisance or a dangerous instrumentality." For this reason the doctrine of the "turntable case," which has been recognized and approved in this jurisdiction, is not applicable to this case. *Gurley v. Power Co.,* 172 N. C., 690, 90 S. E., 943. That doctrine is founded on an exception to the general rule with respect to the liability of a landowner to trespassers, and should be restricted and not extended. *Kramer v. R. R.,* 127 N. C., 328, 37 S. E., 468. In *Briscoe v. Lighting and Power Co., supra,* it is said:

"If the exception is to be extended to this case, then the rule of nonliability as to trespassers must be abrogated as to children, and every owner of property must at his peril make his premises childproof. If the owner must guard an artificial pond on his premises, so as to prevent injury to children who may be attracted to it, he must on the same principle guard a natural pond. The courts which have adopted the

doctrine of the 'turntable case' have uniformly held that it was not to be extended to other structures and conditions. A number of highly respectable courts have rejected it as unsound." ·

Under the decision in this case it would seem that a landowner is liable for injuries to a child who has gone upon his land, and been injured thereby, as an insurer, and not on the principles of actionable negligence as those principles have been heretofore applied. If such be the law, ownership of land in this State carries a hazard which makes it dangerous, for it is well-nigh impossible for a landowner, at all times and under all conditions, to keep his land childproof.