B. F. WELLONS, ADMINISTRATOR OF THE ESTATE OF BILLY JEAN NEWSOM, v. M. B. SHERRIN, D. E. SAPPENFIELD, AND R. C. SAPPENFIELD, INDIVIDUALLY, AND D. E. SAPPENFIELD AND R. C. SAPPENFIELD, PARTNERS, TRADING UNDER THE FIRM NAME AND STYLE OF "JACKSON PARK GRILL."

(Filed 8 May, 1940.)

Negligence § 4a—Allegations held sufficient to state cause against all defendants who maintained open pit on land.

The complaint alleged that the lessor and lessees of a filling station, upon finding out that the septic tank constructed by the lessee on the premises was inadequate, dug a pit on the adjacent lot belonging to one of lessees and connected the said pit with the septic tank, the cost of constructing the pit being borne by all of them, that the open pit was allowed to become filled to a depth of five to eight feet with refuse from the septic tank, that it was not covered or guarded in any manner but was permitted to become hidden by weeds, that the vacant lot on which the pit was maintained was frequented by many people, including a number of children, that the pit was constructed within two feet of the adjacent property line, that intestate's father rented the house on the adjacent premises, moved therein with his wife and six children, including intestate, that no warning was given to intestate's father or mother, that intestate, a child five years old, fell into the open pit and was drowned. Defendant lessor demurred to the complaint on the ground that it failed to state a cause of action as to him. *Held:* The facts alleged are sufficient to state a cause of action against the demurring defendant and the demurrer was properly overruled.

BARNHILL, J., concurring. STACY, C. J., SCHENCK and WINBORNE, JJ., join in concurring opinion.

APPEAL by M. B. Sherrin from *Grady, Emergency Judge,* at September, 1939, Extra Session, of MECKLENBURG. Affirmed.

This is an action for actionable negligence, brought by plaintiff, administrator of the estate of Billy Jean Newsom, against the defendants, landlord and tenants, as joint tort-feasors, for the death of his intestate.

The complaint, in part, is as follows:

"That M. B. Sherrin has caused to be erected on his said lot of land hereinbefore described a gasoline service station, building, store and grill.

"That subsequent to the erection of said service station building, M. B. Sherrin, owner, executed a written lease on said premises to R. C. Sappenfield and D. E. Sappenfield, who operate a business at said location as partners, trading under the firm name and style of 'Jackson Park Grill.' . . .

"That in erecting and equipping the original service station building for occupancy, the said M. B. Sherrin, owner, had installed in said building a water system, together with a septic tank for disposal of waste and sewage, which septic tank was located on the said lot of M. B. Sherrin only a few feet from the building hereinbefore described and alleged.

"That D. E. Sappenfield and R. C. Sappenfield, lessees, entered into possession of said service station building under their lease from M. B. Sherrin, owner of said property, and were in possession of said building on the 16th day of February, 1939.

"That for the period beginning with the year 1933 and up to the present time, D. E. Sappenfield and R. C. Sappenfield have occupied said building continuously under said lease, and operated their business at said location.

"That in the year 1938, the defendants M. B. Sherrin, R. C. Sappenfield and D. E. Sappenfield discovered that the septic tank which had been installed with the water system in the original service station building was unsatisfactory and was failing to carry the refuse and sewage from the lavatory and sewage connections at said location, and was entirely too small adequately to carry away and dispose of said refuse and waste and sewage.

"That upon the discovery that the septic tank at said location was inadequate and too small to carry away the refuse from the sewage and plumbing connections at said location, the defendants M. B. Sherrin, R. C. Sappenfield and D. E. Sappenfield agreed to remedy the defects and inadequacy of the said septic tank as then constructed by laying a pipe line from the said septic tank to the easterly end of the lot owned by the defendant Sappenfield, and at the end of said pipe line to dig a hole, or pit, in the ground about ten feet long and about eight feet wide, and with a depth of about ten to twelve feet, into which hole, or pit, the sewage and refuse from the original septic tank on Sherrin's lot was to be conveyed, which agreement was executed, and the costs and expenses

incident to such extension and construction of said hole, or pit, were borne by the three defendants herein, M. B. Sherrin, R. C. Sappenfield and D. E. Sappenfield.

"That the lot of M. B. Sherrin on which the service station building hereinbefore described is situated, and the vacant lot of the defendant Sappenfield, to which said septic tank was removed, adjoined one another, are located between the two main highways hereinbefore described, and are in a thickly settled residential section where hundreds of children live, congregate and play, and where they have lived, congregated and played for many years, all of which was well known to the defendants, and each of them.

"That the drain pit from the septic tank as hereinbefore described is located within thirty feet of State Highway No. 15, and is a pit, or open hole, about 10 feet long and 8 feet wide and 10 to 12 feet deep, and was on the 16th day of February, 1939, and prior thereto, filled to within two feet of the top with refuse liquid, raw sewage, water and waste from the plumbing connections at said service station building; and that said pit or hole was allowed by the defendants to remain without signal, barricade, top, railing or protection of any kind, and around which pit the defendants had negligently allowed weeds to grow and lap over.

"That said pit, or hole, was dug near to the said State Highway No. 15, as hereinbefore alleged, and also within two feet of the adjoining property line of the premises of a property owner who offered said premises for rent, all of which was well known to the defendants, and each of them.

"That a few days prior to the 16th day of February, 1939, J. C. Newsom, father of plaintiff's intestate, Billy Jean Newsom, rented a house situate on the lot adjacent to the Sappenfield lot upon which the defendants had caused the pit, or hole, hereinbefore described, to be dug and left open; and the said J. C. Newsom moved his family, which family consisted of his wife and six children, including plaintiff's intestate, to the said rented house.

"That neither J. C. Newsom nor his wife, the mother of said children, had any knowledge of the existence of said open pit, or hole, and had no way of ascertaining the danger and hazard caused by said open pit being on the lot adjoining their yard, for that the defendants had allowed weeds to grow up and around said pit, and the defendants, and neither of them, cautioned the mother and father of said children against the danger caused by said open pit, or hole, being situate near to their yard where their children would naturally play; and neither the father nor mother of said children had any warning or notice whatsoever of said dangerous open pit, for that the defendants had erected no barricade that was visible to the eye, had placed no top over said hole, and had given no warning whatsoever of its existence and location.

"That on the 16th day of February, 1939, and prior thereto, the defendants had allowed stagnant water, sewage and waste from the plumbing in said building hereinbefore described, to accumulate in said pit or hole to a depth of some seven to ten feet, and stand open as a dangerous hazard to the lives and safety of the children of the family of J. C. Newsom and his wife, one of whom was plaintiff's intestate, and to other persons in said neighborhood and children in the surrounding homes.

"That the said pit, or hole, hereinbefore described and alleged, was situate on an open lot adjoining the lot on which the defendants' filling station, store and place of business was located; and that on both of said lots many people, including many children of the neighborhood, visited and patronized daily, all of whose lives were menaced by the said open pit, or hole, all of which facts were well known to the three defendants, and each of them.

"That about 4 o'clock in the afternoon of the 16th day of February, 1939, plaintiff's intestate, Billy Jean Newsom, a child less than five years of age, was playing in the yard of the home which his parents had rented, and into which they had moved as a residence.

"That there was no fence dividing the lot on which the residence occupied by the parents of Billy Jean Newsom was situate and the lot owned by the defendant Sappenfield upon which the hole, or pit, hereinbefore described had been dug and left open by the defendants.

"That on the said afternoon of February 16, 1939, J. C. Newsom, the father of Billy Jean Newsom, was away from home and at work in his regular employment; and Frances Newsom, mother of the plaintiff's intestate, Billy Jean Newsom, was at her home attending to her duties as wife and mother.

"That shortly after 4 o'clock on the afternoon of February 16, 1939, Frances Newsom, mother of plaintiff's intestate, Billy Jean Newsom, missed her infant son Billy Jean Newsom from his play and immediately made search to locate him, going to several places in the neighborhood.

"That in the course of about an hour after plaintiff's intestate, Billy Jean Newsom, had been missed from his play, his body was recovered from the pit or hole hereinbefore described, where he had drowned.

"That the death of plaintiff's intestate, Billy Jean Newsom, was caused solely and proximately by the negligence, lack of care and unlawful maintenance of said hole or pit dug and maintained by the defendants on the lot of the defendant Sappenfield, which pit or hole had been allowed by the defendants to fill to a depth of five to eight feet with waste water, sewage and fetid matter from the plumbing of the defendants in the said filling station building and place of business of the defendants on the lot belonging to the defendant M. B. Sherrin.

"That the defendants were negligent, in that (a) they and each of them dug, constructed and maintained the hole or pit hereinbefore described and alleged on the lot belonging to the defendant Sappenfield, and failed to enclose the same with any fence, barricade, or protection whatsoever; in that (b) they dug, constructed and maintained said hole or pit as aforesaid without placing any cover over the same; and that (c) they failed to give any notice, warning, or signal of the location and existence of the said hole or pit; in that (d) they permitted grass and weeds to grow up around the edges of said hole or pit, which rendered it difficult to observe and beware of said pit or hole; in that (e) they failed to notify anybody, and particularly the parents of Billy Jean Newsom, plaintiff's intestate, of the presence and danger and hazard of the said hole or pit; and in that (f) they dug, constructed and maintained a hole or pit eight to ten feet deep on open, level ground, without preparing any safeguards around the same, and then permitted said pit to be filled to a depth of some five to eight feet with water, sewage, fetid matter and other refuse, into which any person falling would surely be drowned."

The prayer set forth the damage. The defendant M. B. Sherrin demurred to the complaint on the ground that "Said complaint fails to state a cause of action against M. B. Sherrin."

The judgment of the court below is, in part, as follows: "Now, therefore, it is considered, ordered and decreed that said demurrer as filed by the defendant M. B. Sherrin is hereby overruled, and the defendant M. B. Sherrin is allowed twenty (20) days from this date in which to file his answer." The defendant M. B. Sherrin excepted and assigned error to the court below overruling the demurrer and appealed to the Supreme Court.

*Jake F. Newell and B. F. Wellons for plaintiff.*

*Sherrin & Barnhardt and Hartsell & Hartsell for defendant M. B. Sherrin.*

CLARKSON, J. The defendants D. E. and R. C. Sappenfield, tenants, did not demur to the complaint, the landlord M. B. Sherrin did. The question for our decision is: Did the court below properly overrule the demurrer of M. B. Sherrin, who demurred to the complaint of plaintiff on the ground that it failed to state a cause of action against him? We think so.

The facts succinctly alleged in the complaint are as follows: The defendant M. B. Sherrin, a landlord, owned a filling station located in a thickly settled residential section of Cabarrus County, where hundreds of children lived and played, which he leased to his codefendants Sappen-

field.   One of the Sappenfields owned a vacant lot adjacent to the prop-
erty of the defendant Sherrin.   Subsequent to the lease, and upon dis-
covery that the septic tank built with the original plant was inadequate,
all of the defendants met on the premises and agreed to enlarge the plant
by digging a large pit on the land owned by Sappenfield and to connect
with the original plant.   The defendant Sherrin and both his codefend-
ants Sappenfield shared equally the costs of the extension and excavation
of the pit, and upon completion left the same uncovered, unprotected
and concealed by weeds, without warning, and allowed to fill with water,
sewage and other waste liquids.   A few days before 16 February, 1939,
while this condition existed, plaintiff's intestate, together with his par-
ents, moved into a vacant house immediately adjacent to the lot upon
which the unenclosed pit existed, and on said 16 February, 1939, while
at play, the child, plaintiff's intestate, fell into the pit and was drowned.
No member of the family of plaintiff's intestate had any knowledge or
warning beforehand of the existence of the open pit.

In *Knight v. Foster,* 163 N. C., 329 (332), the following is stated:
"Where dilapidated premises are leased in a ruinous condition, known
to the landlord, and such condition causes the use of public highways
and thoroughfares in populous cities to become unsafe and insecure, and
the landlord knows of the conditions and suffers them to continue, both
the landlord and tenant are tort-feasors, and may be sued jointly or
severally.   *Ahern v. Steele,* 115 N. Y., 202, is an instructive case in
which the authorities as to the liability of landlord and tenant to third
parties are collected and differentiated.   It is there held, citing Wood's
Landlord and Tenant, 230, 'If a nuisance existed upon the premises at
the time of the demise, the landlord as well as the tenant is liable for the
damages resulting therefrom.' "   Annotated 50 L. R. A., New Series, 286.

In *Boyd v. R. R.,* 207 N. C., 390, the following is cited with approval:
"A judgment of nonsuit was reversed in *Starling v. Cotton Mills,* 168
N. C., 229, 84 S. E., 388.   In that case the plaintiff's intestate, a boy six
years of age, fell into a reservoir on the defendant's premises, and was
drowned.   The defendant had caused a fence to be constructed around
the reservoir, but had failed to keep the fence in repair.   Plaintiff's
intestate crawled through a hole in the fence and fell into the reservoir.
There was evidence tending to show that plaintiff's intestate and other
children had been accustomed to play about the reservoir, and that the
defendant knew of this custom, and because of this custom had caused
the fence to be erected for the protection of the children.   In the opinion
in that case it is said: 'It does not admit of debate that the fact that
such a dangerous place was unguarded by a secure fence, where children
of that age were allowed to play, was culpable negligence on the part of
the officers of the defendant.   The very fact that a fence has been put

up of itself shows that these authorities were aware of the danger.   To permit it to become dilapidated was negligence.' "   *Brannon v. Sprinkle,* 207 N. C., 398.

In *Wilson v. Dowtin,* 215 N. C., 547 (550), is the following: "The general and basic rule is that when third parties are injured as the result of any defective condition in leased premises he may have recourse against the lessee, but not against the lessor.   *Williams v. Strauss,* 210 N. C., 200, 158 S. E., 252; *Combs v. Paul,* 200 N. C., 382, 157 S. E., 12. The liability may, however, be extended to the landlord or owner—(a) When he contracts to repair; (b) where he knowingly demises the premises in a ruinous condition or in a state of nuisance; (c) where he authorizes a wrong.   1 Jaggard Torts, 223; 5 Dillon Mun. Corp. (5th Ed.), 3028; 36 C. J., 208; *Knight v. Foster,* 163 N. C., 329."

In Thompson on Real Property (4th Ed.), (1940), part sec. 1555, p. 23, we find (citing the *Wilson case, supra*) : "So, as a general rule, a third person who is injured as a result of the defective leased premises may have recourse against the tenant but not against the landlord, but a landlord who contracts to repair, or knowingly demises the premises in a ruinous condition, he may be held liable to such third person.   .   .   . (p. 26)   The landlord is liable, however, where he has leased the premises with a nuisance upon them.   .   .   .   (sec. 1581, p. 71)   A person injured on leased premises may bring a joint action against the landlord and tenant for injuries alleged to have resulted from their joint negligence.   (p. 72)   'It is settled law that where the owner lets premises which are in a condition which is unsafe for the avowed purpose for which they are let, or with a nuisance upon them when let, and receives rent therefor, he is liable whether in or out of possession, for the injuries which result from their state of insecurity to persons lawfully upon them; for by the letting for profit he authorized a continuance of the condition they were in when he let them, and is, therefore, guilty of misfeasance.' "   *Gaither v. Generator Co.,* 121 N. C., 384.

N. C. Code, 1939 (Michie), sec. 4426 (c), is as follows: "It shall be unlawful for any person, firm or corporation, after discontinuing the use of any well, to leave said well open and exposed; said well, after the use of same has been discontinued, shall be carefully and securely filled: Provided, that this shall not apply to wells on farms that are protected by curbing or board walls.   Any person violating any of the provisions of this section shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned, in the discretion of the court."   This section is said to be a sensible regulation in 1 N. C. Law Rev., p. 300.

In the present action it is specifically alleged that "They and each of them dug, constructed and maintained the hole or pit hereinbefore described and alleged on the lot belonging to the defendant Sappenfield,

and failed to enclose the same with any fence, barricade, or protection whatsoever."

For the reasons given, the judgment of the court below overruling the demurrer of M. B. Sherrin is

Affirmed.

BARNHILL, J., concurring in the result: The complaint discloses that the condition about which the plaintiff complains did not exist on property belonging to the defendant Sherrin. He was not the lessor thereof. Consequently, *Knight v. Foster,* 163 N. C., 329, 79 S. E., 614; *Wilson v. Dowtin,* 215 N. C., 547, 2 S. E. (2d), 576, and other cases cited which discuss the liability of a landlord who demises premises in a ruinous condition are not authoritative and have no bearing upon the question here presented. Nor is it alleged, either directly or indirectly, that the provisions of C. S., 4426, have been violated by the defendant.

In the argument here counsel admitted that the plaintiff is not relying on the attractive nuisance doctrine. The allegations in the complaint would not sustain such contention. It follows that the discussions in the opinions in *Boyd v. R. R.,* 207 N. C., 390, 177 S. E., 1; *Starling v. Cotton Mills,* 168 N. C., 229, 84 S. E., 388; and *Brannon v. Sprinkle,* 207 N. C., 398, 177 S. E., 114, do not tend to sustain the complaint nor justify the conclusion that a cause of action is therein set out.

It is alleged that the defendant Sherrin, together with the defendants Sappenfield, constructed and are maintaining the pit, which is described in the complaint, on premises belonging to the defendants Sappenfield for the joint benefit of all the defendants; that this pit is concealed or hidden by weeds and other growth; that it is constructed within 2 feet of the unprotected property line of the property occupied by the deceased and other members of his family; that there were six small children in the family of the deceased, who was five years of age; that the property is located in a thickly settled residential section; that small children are accustomed to play on the vacant premises on which the pit is located; that the defendant knew or, in the exercise of ordinary care, should have known that such children were accustomed to play on the lot and that their safety and lives were menaced by the open pit or hole which was hidden by weeds and other growth and around which no fence or other protection was placed and of which no warning was given.

In my opinion these allegations are sufficient to constitute a cause of action. If the defendant Sherrin was in fact at the time participating in the maintenance of the pit or hole located on the premises of the defendants Sappenfield and the plaintiff offers evidence tending to support the other allegations, then it is for the jury to say whether, in the exercise of ordinary care, it was his duty to provide protection by fence

or other devices and to give warning of the danger incident to the existence of the pit. I concur in the view that the judgment below should be affirmed.

STACY, C. J., SCHENCK and WINBORNE, JJ., join in this opinion.