W. C. STARLING, ADMINISTRATOR, v. SELMA COTTON MILLS.

(Filed 3 March, 1915.)

1. **Master and Servant—Children—Negligence—Trials—Nonsuit.**
   In an action to recover for the death of a child 5 years of age, caused by drowning in a reservoir of the defendant cotton manufacturing plant, there was evidence tending to show that the reservoir contained 7 or 8 feet of water, coming within a few inches of the top, and that the intestate fell in while endeavoring to get a drink of water, and met his death; that the reservoir was situated near the mill and the tenement-houses of the defendant's employees, in one of which lived the father of the intestate, and where their children usually played, upon a grassy place shaded by trees; that a fence 3½ or 4 feet high had been placed around the reservoir, which had rotted in places, causing openings therein large enough to admit of the passage of the children, through one of which the intestate had gone, upon this occasion, to get water, and that to the top of the wall on which the fence was situated was a gradual upward slope from the children's playground. *Held,* sufficient to be submitted to the jury upon the issue of defendant's actionable negligence.

2. **Master and Servant—Children—Negligence—Trespasser.**
   A 5-year-old child of an employee of a cotton mill, while on the playground used by the children of employees, in attempting to get a cup of

water from a reservoir used in connection with the plant, cannot be considered a trespasser, in an action brought by his administrator to recover damages against the defendant for its negligence in not properly safeguarding the reservoir, resulting in the drowning of the intestate.

**3. Contributory Negligence—Children—Trials—Questions of Law.**

Under the circumstances of this case it is held that a 5-year-old boy is too young to be guilty of contributory negligence.

**4. Judgments—Nonsuit—Res Judicata.**

A judgment of nonsuit is not *res judicata* in a subsequent action brought on the same subject-matter.

APPEAL by plaintiff from *Connor, J.,* at September Term, 1914, of JOHNSTON.

*Manning & Kitchin for plaintiff.*
*A. Jones & Son and Douglass & Douglass for defendant.*

CLARK, C. J. This is an appeal from a judgment of nonsuit. The plaintiff's intestate, a bright little boy 5 years of age, was drowned in a reservoir on defendant's premises, Saturday afternoon, 20 February, 1909. The reservoir was about 50 feet around, with a brick wall around it. It was 2 or 3 inches from the top of the brick wall to the water on the inside. Rev. Mr. Morris testified that there had been a fence around the reservoir and that there was still "a piece of one there at the time of the drowning of the little boy, Alma Starling." He testified that the fence was put up with post-oak posts, skinned and the bark taken off, and slatted up between the posts, which were 8 feet apart, with slats fastened with small nails. These slats were 3 inches apart at the bottom and wider apart going up till they were 8 inches apart at the top. The fence was 3½ or 4 feet high. This reservoir was close to the mill and near the tenement-houses of the operatives, and their small children played around it almost every day, rolling their hoops up and down the platform on the side of the reservoir. The father of Alma Starling, who was a mill operative, lived 210 feet from the reservoir. The witness testified further: "The fence around the reservoir was decayed and rotted and falling down. Some of it had fallen off. There were several places around the reservoir where the slats had fallen off, mostly on the side of the street where they had hauled coal. The slats had fallen off at the bottom. There was one hole in the fence I could crawl through. That hole was something like 10 feet from the place where the body was found. There were three places where the fence had rotted down. I had talked with Mr. Rose, the superintendent, about the condition of the fence, and heard him speak about it. It had been in that condition for some time. Pretty soon after this drowning I got orders to put the fence up. The reservoir was about 15 feet from the mill. There was a passage-

way between the reservoir and the mill. There is a sloping earth bank on the outside that leads up to the top of the wall on which the fence was built." The water on the inside, he said, came within 2 or 3 inches of the top of this wall. The posts were 8 feet apart and the wall was 16 or 18 inches broad at the top. The slope of the wall on the outside was gradual.

There is also evidence that small children were playing about the reservoir and all around it every day. The reservoir was 25 or 30 steps from the front end of the mill. Small children of varying ages played around the reservoir, where there was a grassy place and trees for the children to play.

One of the little companions of the deceased boy testified that Alma went through the hole in the fence to get some water to drink in the tin cup, and fell in and was drowned; that he easily went through the hole near the bottom of the fence, which was 12 to 18 inches wide.

There were several witnesses, who testified to the same effect, that the reservoir, which was 7 or 8 feet deep, was surrounded by a fence which had been suffered to become dilapidated, with many holes through it, and that children 5 or 6 years old and under were in the habit of playing around the reservoir, and that the management of the mill knew of it.

It does not admit of debate that the fact that such a dangerous place was unguarded by a secure fence, where children of that age were allowed to play, was culpable negligence on the part of the officers of the defendant. The very fact that a fence had been put up of itself shows that these authorities were aware of the danger. To permit it to become dilapidated was negligence. It may be that if the defendant had put on evidence a different state of facts could have been shown, or matters in excuse. But upon the evidence before us it was clearly error to grant a nonsuit.

This case has no resemblance to *Briscoe v. Power Co.,* 148 N. C., 396. That decision was put upon the ground that the child was a trespasser and of an age to be guilty of contributory negligence. But even in that case it was said that when children are trespassers liability will be enforced in many cases where there would be no liability if the injury had been sustained by persons of maturer age. The humane judge who wrote that opinion says, on p. 411: "An infant who enters upon premises, having no legal right to do so, either by permission, invitation, or license, or relation to the premises or its owner, is as essentially a trespasser as an adult; but if, to gratify a childish curiosity or in obedience to a childish propensity excited by the character of the structure or other conditions, he goes thereon, and is injured by the failure of the owner to properly guard or cover the dangerous conditions which he has created, the owner is liable for such injuries, provided the facts are such

as to impose the duty of anticipation or prevision; that is, whether under all the circumstances he should have contemplated that children would be attracted or allured to go upon his premises and sustain injury."

But in this case these children were not trespassers. They were 5 or 6 years old and were at their usual playground, where they went every day, which fact was necessarily known to the management of the mill. This playground was in immediate proximity to the reservoir and to the mill, and the officials knew the danger of the children falling in there either in their play or in attempting to get water to drink, as this little boy did. The outside bank was sloping and the children could climb up easily and would be tempted to do so naturally. On the inside the water came up within 2 or 3 inches of the top, and the wall on the inside was perpendicular, with the water 7 or 8 feet deep. A more dangerous situation could not have been devised. The management of the mill were aware of the danger, as is shown by their putting a fence around it. Indeed, the danger was self-evident. The children were those of the operatives of the mill and were, so to speak, on their own grounds. They were not trespassers certainly. There is much evidence that the fence was dilapidated and direct testimony that the little boy went through a hole in the fence near the ground. There was evidence that his playmate told him that it was dangerous, but the child was too young to be guilty of contributory negligence.

The fact that a nonsuit had been formerly taken is not *res judicata.* *Hood v. Tel. Co.,* 135 N. C., 627, and cases there cited; *Helms v. Tel. Co.,* 143 N. C., 394; *Tussey v. Owen,* 147 N. C., 338; *Lumber Co. v. Harrison,* 148 N. C., 333. Nor can we sustain the motion that a cause of action is not stated.

The judgment of nonsuit is
Reversed.