W. D. STARLING, ADMINISTRATOR, v. SELMA COTTON MILLS.

(Filed 22 March, 1916.)

1. **Negligence — Trials — Evidence — Instructions — Dangerous Conditions— Licenses.**

    A cotton mill company did not keep the fence around its reservoir in repair, where the children of its employees were permitted to have their playground, and a 5-year-old child of an employee, the plaintiff's intestate, got through a hole in the fence and was drowned: *Held,* it was reversible error for the judge to charge the jury that the only negligence imputable to the defendant was in permitting the particular hole to be there, for if the whole fence was dilapidated and insecure at this dangerous location, it would be evidence of defendant's negligence in not repairing it.

**2. Negligence—Trials—Instructions—Expression of Opinion.**

Where the trial judge read his notes of the evidence to the jury and instructed them if they found the facts as thus shown it would narrow the inquiry of negligence down to a certain phase, a position taken by him all through the charge, it is held as reversible error, as unduly emphasizing the view the court had taken of the evidence.

**3. Same—Licensee—Rule of Prudent Man.**

Where a cotton mill company authorized its employees to have a playground at a place rendered dangerous through its own negligence, which caused the death of plaintiff's intestate, a 5-year-old child of an employee, it is reversible error for the trial judge to lay down the rule of the prudent man as a measure of the defendant's responsibility in safeguarding the children of others against being injured by the dangerous condition existing on its own land.

**4. Trials—Instructions—Evidence—Restrictions.**

It is error for the trial judge to single out the deposition of a particular witness and remind the jury that he was the only eye-witness to the occurrence, and if his testimony was believed, it would restrict them in their inquiry.

**5. Corporations—Instructions—Prejudice—Expression of Opinion—Statutes.**

In this action to recover damages from a corporation for its alleged negligence in inflicting a personal injury, the judge, in his charge, recited the benefits conferred by corporations upon the citizens, without mentioning the benefits they receive in return, or stressing the duty of the corporations to avoid negligence which might cause death or injury, and intimated that he would not permit a verdict rendered upon "guesswork, conjecture, sympathy, pity, or prejudice," etc. *Held,* the charge was an expression of opinion by the judge upon the evidence forbidden by the statute, Revisal, sec. 535.

APPEAL by plaintiff from *Bond, J.,* at April Term, 1915, of JOHNSTON.

*Douglass & Douglass and Armistead Jones & Son for plaintiff.*
*F. H. Brooks for defendant.*

CLARK, C. J. This is an action against the defendant to recover damages for the negligent drowning of the infant intestate of the plaintiff in a reservoir on the premises of the defendant. This case was before the Court, 168 N. C., 229. There are numerous exceptions, but it is not necessary to discuss all of them.

There was evidence that the children of the operatives, among whom was this child, were in the habit of using the ground around the reservoir, which was in a few feet of the mill, as a playground; and that the plaintiff's intestate, a child 5 years old, was drowned in the reservoir, was not denied.

The plaintiff excepted to the following charge: "If it is a fact, I mean if the jury find that to be a fact, that the little boy was drowned

by going through a hole in the fence, then the height of the fence was immaterial, because he did not go over it, he didn't fall over it; and the condition of every other part is immaterial, and it would narrow itself down to the question whether or not there was negligence imputable to the management of the company by the existence of the hole that the little fellow went through in the fence, if that is the way his death was caused. Because if there had been no other fence there at all, and he had still gone through the hole in one panel that was there, the only phase of negligence would have been whether or not the existence of the hole in the fence was a negligent failure of duty, because it makes no difference how much negligence a person is guilty of, unless that particular negligence is the cause of an injury there has been no actionable negligence." The plaintiff has cause to complain of this instruction.

Aside from the instruction being somewhat argumentative, the condition of other parts of the fence was evidence of negligence to be considered by the jury upon the issue of negligence in this case, for it tended to show that the fence was not kept in proper repair, and that the company had notice of that fact. Indeed, this Court held in this case, 168 N. C., at p. 231, that "it was culpable negligence" for the defendant not to guard the reservoir by a secure fence, when its officers knew that the children of the employees were habitually using that spot for their playground.

The jury might have been warranted in finding that, although this little boy went through a particular hole or other dilapidation in the fence, the fence was not of sufficient height and was built in an imperfect manner and withal was so dilapidated at other places that the child could have gotten into this pool of water although this particular hole had not existed for a sufficient length of time for the defendant to have actually observed it. There was evidence that the entire fence was improperly constructed and other parts thereof were so dilapidated that a reasonable inspection, or any inspection whatever, would have disclosed to the company the condition of the fence at this particular point. The plaintiff alleged in his complaint that the fence was improperly constructed and was of insufficient height and was not a sufficient protection to children playing around the reservoir as they were accustomed to do. Moreover, the plaintiff contended that the fence was old, worn and dilapidated, with several holes therein of sufficient size for children to pass through. The defendant contended that the fence was properly built and in good repair, and if there was a hole in the fence it was of recent date, and that it had no notice thereof. The charge complained of deprived the plaintiff of his right to have the jury consider that the fence was throughout in such a dilapidated condition that the defendant should not have failed to take notice thereof, and that it was incumbent

upon it to closely examine the fence, not only in respect to other places, but throughout, and that if it had done so it could not have failed, without negligence, to close the very hole through which the boy is claimed by the defendant to have gone and fallen into the reservoir. The charge of the court that though there was a dilapidated and dangerous fence around this dangerous reservoir at the children's playground, yet if the child went through a particular hole, in a particular panel, which was a recent dilapidation, that the jury should find that the defendant was not liable unless it was shown to their satisfaction that the child went through the fence at some other point, was equivalent to telling the jury that it was not the duty of the defendant to keep a good and sufficient fence around said reservoir. If the whole fence was dilapidated and insecure at this dangerous spot, the defendant was guilty of negligence in not repairing it, and in doing so would have repaired this particular hole.

It is not a conclusive defense that there was evidence that the defendant had one particular panel of fence in good repair until just before the accident, and that there was evidence that the child was drowned by going through a dilapidation that had recently occurred in that panel.

It was also error for the court to charge the jury: "I have read to you my notes of the evidence in this case. The direct evidence, if you believe it, and find the facts as shown by it, would narrow the case down to what is the negligence complained of." This charge thrust upon the jury the judge's view of the evidence, and unduly emphasized the position taken by him all through the charge, that in order for the plaintiff to recover it was incumbent upon him to prove that the little child was not drowned in the exact manner and at the exact point detailed by one single witness.

Further, the following part of the charge was prejudicial to the plaintiff: "The law doesn't require a man to be all-wise; it requires him to do only what a prudent man in the exercise of that degree of caution and care commensurate with the existing dangers would do in safeguarding the children of others against being injured by any dangerous reservoir, or other structure which might be on the land of such supposed person." This in effect was an instruction to the jury that the only duty which the defendant owed to the plaintiff's intestate in this case was such duty as any man would owe the children of others in safeguarding them against being injured by any reservoir or other structure which might be on his land, whether he be a trespasser or not (which the child was not), and ignored the testimony in this case that an officer in the employ of the defendant saw this boy playing at a point near to this dangerous reservoir a short time before he was drowned, and gave him permission to play there, and further ignored

STARLING *v.* COTTON MILLS.

the testimony that the children of the employees of the mill constantly and frequently played around and about said reservoir with the knowledge and permission of the defendant.

The judge also charged the jury that a deposition had been read "of the little boy who was with this little boy, and, as I recall, that is the only eye-witness of the occurrence, and that boy says that this little boy went through a hole in one panel of the fence, and if the jury finds that was so, gentlemen, it brings it square down to the question, Was it negligence on the part of this defendant for that particular hole to be in that fence? and would render the condition and height of the fence elsewhere immaterial. Because nothing else, if that were so, caused the death, if it was caused at all by their negligence, except this hole in the fence."

There is the additional objection to this charge, besides what is said above, that it was error for the judge to single out and emphasize the testimony of this one witness to the exclusion of the other possibilities or probabilities as to the place where the boy went through the fence and was drowned. It might be that the little boy whose deposition was read was mistaken as to the identity of the hole. But it impressed upon the jury the strong probability, as the judge thought, that this testimony was correct because this little witness was "the only eye-witness" to the tragedy. There are repeated decisions that it is error thus to single out and stress the testimony of one witness, and this must especially be so when the circumstance is emphasized by the judge that he was "the only eye-witness."

There are other exceptions to the charge, but in view of what we have said above it is not necessary to consider them. We cannot be inadvertent, however, to the exception that the judge violated the act of 1796, now Revisal, 535, which forbids the intimation of any opinion by the judge upon the facts, however inadvertently it may be done.

The judge in this case told the jury: "Whether it is a railroad, cotton mill, or any other sort of a corporation, it is entitled to an absolutely fair and impartial hearing and consideration when it brings a suit, or is sued in a court of justice." This was proper if there was cause to apprehend that the jury might be biased, and we are not disposed to interfere with the judge's discretion in saying this much; but he added: "Our own State is greatly indebted for its development to corporations and investment of capital by people who do not live in the State. We have great railroad facilities in this State that with rare exceptions were built by the capital of people who never lived here. Not for the purpose of getting you to be prejudiced in their favor, but to wipe away all possible prejudice, if any should exist against them, it is fair for us to consider as an example, for instance, how your county or our State would be today if we had no railroads in it, and no cor-

porations, except those capitalized by residents of the State." The plaintiff excepted to these remarks. It may well be that the statement of fact that with rare exceptions our railroads were built by the capital of people who never lived here cannot be sustained in view of the historical fact that they were largely built by State and county bonds and local subscriptions, and that only of more recent years has their ownership passed into the hands of nonresidents by methods, whatever they were, that do not require any special sense of obligation, at the expense of the plaintiff. But the plaintiff's exception does not rest upon the statement of fact, but to the indication by the judge that he feared that the jury would not give the defendant justice, because it was a corporation, and to that extent intimated that the plaintiff ought not to recover judgment against the defendant, especially in view of the fact that he did not give the other side of the proposition as to what those who are not corporations have done for the State, and the right of the public to be protected against negligence of corporations when they inflict the loss of life or limb, and especially in view of the further statement by the judge further on in his charge, reiterating his views: "I am determined that no verdict, as far as I can prevent, shall be based upon guesswork, conjecture, or sympathy, or pity, or prejudice. I want the jury to find the facts according to the evidence in the case, and whatever they find will settle the legal rights of the parties. The question isn't whether the little boy was drowned. That is not disputed. The question is, Was his death caused by the negligence of the defendant? I read to you what negligence is. I have read to you my notes of the evidence in this case. The direct evidence, if you believe it, and find the facts to be as shown by it, will narrow the case down to, What is the negligence complained of?" The plaintiff again excepted.

The learned judge was doubtless without any intention to throw the weight of his great office and his personal opinion into the scales. But in this charge he plainly intimated that he feared that the jury would be biased against the defendant because it was a corporation; he recited the great and indispensable obligations under which the public rested to corporations. He did not stress, on the other hand, the duty of corporations to avoid negligence which might cause death or injury to the citizens nor the great indebtedness of corporations to the people to whom they owe their charters and carefulness in operation; and he further intimated that he would not permit a verdict to be brought about by "guesswork, conjecture, or sympathy, or pity, or prejudice." There is nothing to indicate that the jury would be governed by these motives—all of them motives which, if they existed, would operate only against the defendant, not against the plaintiff. The expression of the judge of his intention to prevent a verdict by those motives was, therefore, an expression of his intention to protect the defendant. The jury might well have

taken it that the judge did not think that a verdict could be brought in against the defendant unless the jury were moved by such motives, and that if it was, he would set it aside.

Taken in connection with the whole charge, it certainly could, not unreasonably, have been so understood by the jury. The judge was doubtless inadvertent that his remarks could create that impression on the jury. He was so intent that a verdict should not be rendered by prejudice against a corporation, or by sympathy or pity for the plaintiff, that he failed to give the other side of the proposition, and unduly emphasized his fears. In "avoiding Scylla, he fell into Charybdis." The necessity of judges, in obedience to the statute, avoiding any expression, however inadvertent or well intentioned, which may be reasonably construed by a jury, quick to perceive the judge's point of view, as more favorable to one side than the other, has never been better expressed than by *Mr. Justice Walker* in *Withers v. Lane,* 144 N. C., 187. The whole opinion may be read with benefit by all who are called upon to preside at the trial of fact by a jury. He quotes, among others, from *Chief Justice Taylor* in *Reel v. Reel,* 9 N. C., 63, as follows: "Upon considering the whole of the charge, it appears to us that its general tendency is to preclude that full and free inquiry into the truth of the facts which is contemplated by the law, with the purest intentions, however, on the part of the worthy judge, who, receiving a strong impression from the testimony adduced, was willing that what he believed to be the very justice of the case should be administered. We are not unaware of the difficulty of concealing all indications of the conviction wrought on the mind by evidence throughout a long and complicated cause; but the law has spoken, and we have only to obey."

*Mr. Justice Walker,* after quoting the above, and other similar statements from the opinions of this Court, most appropriately continues in his own language as follows: "What these eminent jurists have so well said about the duty of the trial judge under our statute, and the consequence of a violation of it, will, if it is properly heeded, conduce to the more perfect and satisfactory trial of causes. The judge should be the embodiment of even and exact justice. He should at all times be on the alert lest in an unguarded moment something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge,' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged." That case has been repeatedly cited since with approval, as it deserved to be, see Anno. Ed.

We feel entirely assured that the learned judge below did not intend to infringe this statute, any more than he intentionally fell into the

other errors which we have found in the charge. He was as inadvertent to the one as to the other; but in the discharge of our duty, as we see it, we must declare that the plaintiff is entitled to a

New trial.