WARREN FITCH, Administrator of the Estate of EDWIN ALONZO FITCH, Deceased, v. SELWYN VILLAGE, INC., a Corporation.

(Filed 12 December, 1951.)

1. Negligence § 4b—

Ponds, pools, lakes, streams, reservoirs, and other bodies of water do not *per se* constitute attractive nuisances, and while the owner of land upon which there is an artificial body of water may be guilty of negligence in failing to provide reasonable safeguards against injuries to children when he has notice, actual or constructive, that children of tender years frequent the place, no such duty arises in regard to a branch or stream flowing in its natural state.

**2. Same—**

The complaint alleged that plaintiff's intestate, aged two years and eight months, was drowned when he fell into a stream running through defendant's land near the house in which he lived, which his parents rented from defendant, and averred negligence on the part of defendant in that it had constructive notice that children frequented the place and had not erected any fence, guard rail or obstruction to keep them away from the open waters. *Held:* Demurrer to the complaint on the ground that it fails to state a cause of action was properly allowed.

APPEAL by plaintiff from *Crisp, Special Judge,* August Extra Civil Term, 1951, of MECKLENBURG.

This is an action to recover for the wrongful death of plaintiff's intestate, his minor son, Edwin Alonzo Fitch, who was drowned in Sugar Creek in the City of Charlotte on 6 October, 1950, at the age of two years and eight months.

The pertinent facts, as alleged by the plaintiff, are as follows:

1. The defendant corporation owns a tract of land consisting of slightly more than 28 acres in the City of Charlotte, lying on both sides of Wakefield Drive, and bounded on the westerly side by Sugar Creek, the defendant's westerly boundary extending to the center line of Sugar Creek.

2. That during 1950 and prior to the death of plaintiff's intestate, the defendant erected on said property a large multiple-unit rental housing project known as Selwyn Village Apartments.

3. That on and prior to 6 October, 1950, plaintiff's intestate lived with his parents and his brother in one of the defendant's apartments known as No. 231A, Wakefield Drive; that this apartment was located about 19 yards from Wakefield Drive and about 20 yards from the easterly banks of Sugar Creek; that the banks of Sugar Creek, in the vicinity of the apartment house, dropped to a depth of about 15 feet to the waters of the creek, within a distance of about 10 feet, the bank being gradually sloping at some points and steep and precipitous at others; that the depth and current of Sugar Creek varied from a slow, sluggish stream not over a foot deep in very dry weather, to a more swiftly flowing stream with a depth of about three and one half feet after a heavy or prolonged rainfall.

4. That on the occasion in question, there was no fence or other obstruction to prevent small children from falling or climbing down the creek banks to the open waters of Sugar Creek; that defendant knew, or by the exercise of reasonable care could have known, that the banks and waters of Sugar Creek, as it passed over the apartment properties, was a common resort of children and constituted a condition which was inherently dangerous to small children.

5. That on the morning of 6 October, 1950, while at play, and at the moment when his mother had stepped indoors to answer her doorbell,

plaintiff's intestate wandered down to the waters of Sugar Creek, on the defendant's properties, fell into the creek and was drowned.

6. That the death of plaintiff's intestate was due to, caused and occasioned by, and followed as a direct and proximate result of the negligence of the defendant, its agents and servants, in that: The defendant knew, or by the exercise of reasonable care could have known, that for several months prior to the death of the plaintiff's intestate, children of tender years living in the defendant's apartments, were habitually attracted to the waters of Sugar Creek as it flowed over the defendant's property, and were accustomed to play along its waters and banks and that Sugar Creek as it flowed over the defendant's apartment property, often reached a depth sufficient to drown small children; that the defendant negligently invited families with young children to rent its apartments, and did in fact rent said apartments to families with small children, without erecting any fence, guard rail, or other obstruction, or taking any precaution whatever to protect children of tender years from Sugar Creek, or to keep them away from the open waters.

The defendant interposed a demurrer to plaintiff's complaint on the ground that it does not state facts sufficient to constitute a cause of action against the defendant in that: (1) It appears from the complaint that Sugar Creek is a natural creek or stream whose natural condition had in no way been changed or altered by the defendant, and as a matter of law, natural objects are not attractive nuisances; (2) defendant was under no legal duty to plaintiff to take any action or precaution with regard to any natural objects; and (3) that the complaint does not state any cause of action.

The court being of the opinion the demurrer should be sustained on the several grounds set forth therein, entered judgment accordingly. The plaintiff appeals, and assigns error.

*Shannonhouse, Bell & Horn for plaintiff, appellant.*
*Francis H. Fairley for defendant, appellee.*

DENNY, J. The overwhelming weight of authority in this country is to the effect that ponds, pools, lakes, streams, reservoirs, and other bodies of water, do not *per se* constitute attractive nuisances. 56 Am. Jur., Waters, section 436, page 850. "The attractive nuisance doctrine generally is not applicable to bodies of water, artificial as well as natural, in the absence of some unusual condition or artificial feature other than the mere water and its location." 65 C.J.S., Negligence, section 29 (12) j, page 475.

It is, therefore, not negligence *per se* to maintain an unenclosed pond, pool, lake, or reservoir on one's premises. *Barlow v. Gurney*, 224 N.C. 223, 29 S.E. 2d 681; *Hedgepath v. Durham*, 223 N.C. 822, 28 S.E. 2d 503.

It is generally held, however, in this jurisdiction that where one maintains an artificial lake, pond, or reservoir, and children of tender years are attracted thereto and it becomes a common resort for such children to gather and play, "and it appears that the owner knows, or by the exercise of ordinary care should know that it is being so used, then it becomes his duty to exercise ordinary care to provide reasonably adequate protection against injury. Failure so to do constitutes an act of negligence." *Barlow v. Gurney, supra; Hedgepath v. Durham, supra; Cummings v. Dunning,* 210 N.C. 156, 185 S.E. 653; *Brannon v. Sprinkle,* 207 N.C. 398, 177 S.E. 114; *Gurley v. Power Co.,* 172 N.C. 690, 90 S.E. 943; *Starling v. Cotton Mills,* 171 N.C. 222, 88 S.E. 242; *Starling v. Cotton Mills,* 168 N.C. 229, 84 S.E. 388. But, we know of no decision in this or any other jurisdiction, where the owner of land has been held liable for failure to erect a fence or other obstruction to protect small children from obtaining access to a branch or creek upon his premises which flows in its natural state.

It is a matter of common knowledge that streams of water are attractive to children, and that thousands of them flock to them during each year for the purpose of wading or swimming in their cool and refreshing waters, or to fish therein, notwithstanding the common dangers that may exist in such use of our natural streams.

The rule with respect to liability for these dangers which exist in nature, is well stated in the case of *Peters v. Bowman,* 115 Cal. 345, 47 Pac. 598, where the Court said: "The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon; to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing; and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers, existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber-pile cases, and others of a similar character."

If it should be conceded that a branch or creek is inherently dangerous to children of tender years, it must also be conceded that such streams cannot be easily guarded and rendered safe. A street is ordinarily an unsafe place for a child of tender years to play, but the location of a house near a street does not impose upon the landlord any obligation to protect the children of his tenant from injury caused by playing in such

street.  Streets, like streams, cannot be easily guarded and rendered inaccessible to children.

The plaintiff is relying upon the decisions of this Court heretofore cited and the case of *Comer v. Winston-Salem,* 178 N.C. 383, 100 S.E. 619.  All of these cases involved artificial ponds or reservoirs except *Comer v. Winston-Salem,* which case is also distinguishable from the facts disclosed on the present record.  In this latter case, an artificial condition had been created by the construction of a culvert through which the natural stream flowed.  The water, as it flowed out of the culvert, made considerable noise, and people passing over a bridge, which the city had constructed 20 feet above the culvert, could hear the rushing water.  At times, certain dyes were discharged in the stream by mills above the bridge, and the water presented a beautiful spectacle as it came gurgling through the culvert with its many-hued colors.  For twenty years the locality adjacent thereto had been used as a playground for children, and the water of many colors, as it came out of the culvert, could be heard by children crossing the bridge but could only be seen by them by leaning over the bannister or railing, or getting through it.  The plaintiff's intestate, a child 28 months of age, got through the bannister or railing which consisted of two parallel pipes one and one-half inches in diameter, one was placed about eleven inches above the bridge and the other eighteen inches above the lower one.  The child fell to the culvert and was fatally injured by the fall.  Recovery was allowed on the ground that the defendant knew of these conditions and failed to construct adequate bannisters or guards for the protection of children under the existing circumstances.

In the instant case, however, as regrettable as the unfortunate death of plaintiff's intestate was, in our opinion the allegations of the plaintiff's complaint do not make out a cause of action for actionable negligence against the defendant, and this view is supported by numerous decisions from other jurisdictions.  *Peters v. Bowman, supra; Williams v. Kansas City, Clay County & St. Joseph Ry. Co.,* 222 Mo. App. 865, 6 S.W. 2d 48; *Beeson v. City of Los Angeles,* 115 Cal. App. 122, 300 Pac. 993; *McCall v. McCallie,* 48 Ga. App. 99, 171 S.E. 843; *Simon v. Hudson Coal Co.,* 350 Pa. 82, 38 A. 2d 259; *Denver Tramway Corp. v. Callahan,* 112 Colo. 460, 150 Pac. 2d 798; *McGuire v. Carey,* 366 Pa. 627, 79 A. 2d 236; 38 Am. Jur., Negligence, section 149, page 815. *Cf. Salt River Valley Water Users' Ass'n v. Compton,* 39 Ariz. 491, 11 Pac. 2d 839, and *Hunsche v. Southern Pacific Co.* (D.C. Cal.) 62 F. Supp. 634.

The judgment of the court below is

Affirmed.