JADA MARIE LAMPKIN by and through her Guardian Ad Litem, STEPHEN LAPPING, and JAMES CONRAD Plaintiffs v. HOUSING MANAGEMENT RESOURCES, INC., CATAWBA-HICKORY LIMITED PARTNERSHIP and SILVER STREET DEVELOPMENT CORPORATION Defendants and HOUSING MANAGEMENT RESOURCES, INC., and CATAWBA-HICKORY LIMITED PARTNERSHIP Third-party Plaintiffs v. VALERIE RAULERSON, aka VALERIE DAVIS Third-party Defendant

No. COA11-1062

(Filed 15 May 2012)

**Negligence—landowner's duty of reasonable care—not extended to neighboring property—dismissal proper**

The trial court did not err by dismissing plaintiffs' complaint alleging negligence where plaintiffs failed to allege facts sufficient to show that defendants breached a duty owed to the child who was the subject of the suit. A landowner's duty of reasonable care does not extend to guarding against injury caused by a dangerous condition on neighboring property.

Appeal by Plaintiffs from order entered 28 April 2011 by Judge Eric L. Levinson in Catawba County Superior Court. Heard in the Court of Appeals 9 February 2011.

*West & Smith, LLP, by Stanley W. West, for Plaintiffs.*

*Brown Law LLP, by Gregory W. Brown, Joseph B. Chambliss, Jr., and Matthew R. Gambale, for Defendants.*

*No brief filed for Third-party Defendant.*

STEPHENS, Judge.

Plaintiff Jada Marie Lampkin, by and through her Guardian *ad Litem*, Stephen Lapping,[1] and Lampkin's father, Plaintiff James Conrad, commenced this action in Moore County Superior Court against Defendants Housing Management Resources, Inc., Catawba-Hickory Limited Partnership, and Silver Street Development Corporation, seeking damages for personal injuries Lampkin sustained while a resident of the Silver Spring Terrace apartment complex ("the apartment complex"), a group of apartment buildings located on land owned by Defendant Catawba-Hickory Limited Partnership, operated by Defendant Silver Street Development Corporation, and managed by Defendant Housing Management Resources, Inc.

In their complaint, Plaintiffs alleged that on 15 January 2010, while Lampkin was playing on a playground in the common area of the apartment complex, she passed through a broken portion of a chain-link fence owned by the apartment complex to play on a frozen pond on adjacent property. When the ice on the frozen pond broke, Lampkin, who was four years old at the time, fell into the water and sustained permanent brain injury. Plaintiffs also alleged that, prior to Lampkin's injury, when the owner of the adjacent property notified the apartment complex that "children were coming through the fence onto her property" and that she "was concerned someone would get hurt," an apartment complex employee told her that "they would look into the matter." On these allegations, Plaintiffs sought to hold Defendants liable for Lampkin's injury on the grounds that Defendants negligently breached their duty to properly maintain a barrier between their property and the pond.

In their answer, Defendants moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendants also impleaded the owner of the adjacent prop-

---

1. Lapping's name is listed as both "Stephen" and "Stephan F." in various documents filed by the Plaintiffs.

erty and pond. Following a hearing on Defendants' motion before the Honorable Eric L. Levinson,[2] the trial court concluded that Plaintiffs failed to state a claim upon which relief may be granted and entered a 28 April 2011 order granting Defendants' motion to dismiss. From the order dismissing their claims, Plaintiffs appeal, contending that the trial court's dismissal was error because their amended complaint sufficiently pleads a claim of negligence.

On appeal from a Rule 12(b)(6) dismissal, we review the trial court's decision *de novo, Toomer v. Branch Banking & Tr. Co.,* 171 N.C. App. 58, 66, 614 S.E.2d 328, 335, *disc. review denied,* 360 N.C. 78, 623 S.E.2d 263 (2005), and we determine whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Grant Constr. Co. v. McRae,* 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001). To sufficiently state a *prima facie* claim of negligence, a plaintiff's complaint must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff. *Sterner v. Penn,* 159 N.C. App. 626, 629, 583 S.E.2d 670, 673 (2003). In this case, Defendants contend that Plaintiffs failed to set forth a *prima facie* claim of negligence in that Plaintiffs did not allege facts sufficient to show that Defendants breached a duty owed to Lampkin. For the following reasons, we agree.

A landowner in North Carolina owes to those on its land the duty to "exercise reasonable care in the maintenance of [its] premises." *Nelson v. Freeland,* 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998). In their complaint, Plaintiffs allege that this duty of reasonable care includes the duty to keep children on one's land from accessing potentially dangerous adjacent property owned by a third party. Plaintiffs further allege that Defendants negligently breached this duty by failing to ensure that a "suitable barrier was in place to prevent small children from wandering off the property and to the area of the pond." Plaintiffs analogize this case and the duty allegedly owed by Defendants to cases from this State applying the attractive nuisance doctrine, which, in one form, imposes upon a landowner that maintains a pond the duty to protect against injury from that pond where the landowner knows or should know that children gather and play at the pond. *See Fitch v. Selwyn Village, Inc.,* 234

---

2. Pursuant to a 12 January 2011 consent order transferring venue from Moore County to Catawba County, this hearing took place in Catawba County.

N.C. 632, 635, 68 S.E.2d 255, 257 (1951). Plaintiffs contend that a similar, reciprocal duty should be imposed on landowners whose property abuts property on which a third party maintains a pond, *viz.*, where a landowner knows that children from his property are gathering and playing on or near a dangerous condition on neighboring property, the landowner has a duty to protect those children from injury by that condition. We disagree with Plaintiffs' contention that a landowner's duty of reasonable care extends to guarding against injury caused by a dangerous condition on neighboring property, and we conclude that the imposition of such a duty would be contrary to public policy and the established law of this State.

Initially, we note that imposing a reciprocal duty on a landowner adjoining property with a dangerous condition would necessarily and, in our view, impermissibly shift the burden of making that condition safe from the owner of that condition, who has exclusive control over the use of her land, to the owner of the adjacent property, who has no control. Not only would the landowner adjacent to the land with the dangerous condition be burdened with the costs of protecting persons from the neighbor's use, that landowner would be burdened with the costs for compensation of injuries resulting from that use. This burden-shifting would allow the. neighboring landowner to retain all benefits from the use, while externalizing some or all of the secondary costs of the use. As a matter of fairness and economics, where, as here, the neighboring landowner retains the exclusive right to control and benefit from the use of her land, the burden to prevent injury from such use should, likewise, be retained by that neighboring landowner.

This conclusion is in line with numerous decisions in this State establishing that the duty to protect from a condition on property arises from a person's control of the property and/or condition, and in the absence of control, there is no duty. *See, e.g., McCorkle v. N. Point Chrysler Jeep, Inc.,* ___ N.C. App. ___, ___, 703 S.E.2d 750, 753-54 (2010) (adopting rule that "if a landowner relinquishes control and possession of property to a contractor, the duty of care, and the concomitant liability for breach of that duty, are also relinquished and should shift to the independent contractor who is exercising control and possession"); *see also Petty v. Charlotte,* 85 N.C. App. 391, 395, 355 S.E.2d 210, 213 ("The fact of possession or occupation underlies most forms of premises liability."), *disc. review denied,* 320 N.C. 170, 358 S.E.2d 54 (1987). In *Laumann v. Plakakis,* 84 N.C. App. 131, 351 S.E.2d 765 (1987), after the plaintiff was struck by a car when cross-

ing a road between a store and its parking lot and sued the store for failing to make the street crossing safe, this Court held that the duty to control traffic on the street belonged to the city and that the store, therefore, had no duty to ensure the plaintiff's safety in crossing the street. *Id.* at 133-34, 351 S.E.2d at 766-67. Further, we held that while the duty owed by the store to keep its premises reasonably safe is "extensive," "it only applies when the customer is on the [] premises." *Id.* Because the plaintiff in *Laumann* "was not injured on [the store's] premises or parking lot," the store did not breach "its duty to [the] plaintiff to keep its own premises safe." *Id.*

Similarly, in *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982), where the five-year-old plaintiff touched an allegedly exposed electrified portion of a transformer owned and maintained by a power company on land owned by the defendant, our Supreme Court held that because the power company had exclusive control of the transformer via an easement on the defendant's land, the power company "had the *sole* duty to keep safe the transformer which was [the power company's] sole property" and, therefore, "the only obligation to act was [the power company's], and the only possible liability in this case is [the power company's] alone." *Id.* at 611-12, 290 S.E.2d at 598-99 (emphasis in original).

In our view, the foregoing authority clearly establishes that a landowner's duty to keep property safe (1) does not extend to guarding against injuries caused by dangerous conditions located off of the landowner's property, and (2) coincides exactly with the extent of the landowner's control of his property.[3] As such, because Defendants did not control the pond on the adjacent property, their duty to keep their premises safe did not include an obligation to make the pond safe by preventing children on their land from accessing the pond. Rather, the adjacent landowner, with exclusive control over the pond, had the sole duty to keep the pond safe, the only obligation to act, and the only possible liability. *See Green*, 305 N.C. at 612, 290 S.E.2d at 599. Defendants' duty to keep Lampkin and other children safe could have only applied when those children were on Defendants' land and ended where Defendants' ownership and control of their property ended.

---

3. We note one exception described in *Laumann*: where the defendant through some affirmative action *created* the dangerous condition that injures the plaintiff off of defendant's premises. *E.g., Dunning v. Forsyth Warehouse Co.*, 272 N.C. 723, 158 S.E.2d 893 (1968). However, because Defendants did not create the pond on the adjacent land in this case, this exception is not applicable.

Contrarily, Plaintiffs cite several cases that they contend stand for the proposition that "North Carolina does not impose an arbitrary requirement that the dangerous instrumentality be something controlled by the [defendant-landowner]." *See Willis v. New Bern*, 191 N.C. 507, 132 S.E. 286 (1926); *Comer v. Winston-Salem*, 178 N.C. 383, 100 S.E. 619 (1919); *Bunch v. Edenton*, 90 N.C. 431 (1884). Those cases cited by Plaintiffs, however, lend support to, rather than undermine, our conclusion stated above. In each case, the dangerous condition or instrumentality that Plaintiffs contend was beyond the defendant-landowner's control created a dangerous condition *on property owned by the defendant-landowner* and the plaintiff was injured by that dangerous condition under the defendant-landowner's control. *See Willis*, 191 N.C. at 509, 511-13, 132 S.E. at 287-89 (where conditions beyond a street's end gave the impression that the street extended farther than it did and made the end of the street "dangerous," the city, which controlled the street and had the duty to keep it safe, had a duty "to erect a guard, rail, barrier, light, or some adequate device for giving reasonable notice of the danger to a traveler *using said street in a lawful manner*" (emphasis added)); *Comer*, 178 N.C. at 386, 100 S.E. at 621 (where use of a bridge owned by the city was made dangerous by rushing water below the bridge that impelled children playing on the bridge to lean through a railing and over the bridge's edge to look at the water, the city was negligent in failing to provide "sufficient protection for the children of the neighborhood frequenting" the bridge); *Bunch*, 90 N.C. at 435 (where excavation "immediately adjoining" the sidewalk made the sidewalk "perilous," the city had a duty to protect people walking on the sidewalk from the dangerous condition off the sidewalk). Unlike in those cases cited by Plaintiffs, the "dangerous instrumentality" on the adjacent property in this case did not create a dangerous condition on Defendants' property; people properly using Defendants' property were in no danger of drowning in the pond. The nearby pond could only have made Defendants' property "dangerous" insofar as one could access the pond by leaving Defendants' property. However, as discussed *supra*, Defendants did not have an obligation to prevent access to a pond over which they had no control. *See Green*, 305 N.C. at 612, 290 S.E.2d at 598-99 (the party that controls the dangerous condition is the only party that has the obligation to make the condition safe).

While we acknowledge that Plaintiffs have brought to our attention several decisions from other jurisdictions where the courts appear to have come to opposite conclusions facing similar circumstances, *see, e.g., Calkins v. Cox Estates*, 792 P.2d 36 (N.M. 1990);

*McDaniel v. Sunset Manor Co.*, 269 Cal. Rptr. 196 (Cal. Ct. App. 1990); *Limberhand v. Big Ditch Co.*, 706 P.2d 491 (Mont. 1985), we note that numerous other jurisdictions have ruled as we do. *See, e.g., Scarborough v. Lewis*, 565 A.2d 122, 126 (Pa. 1989) (noting that "it is well settled that the law imposes no duty upon a possessor of adjacent land to erect fencing or provide warnings so as to deter persons from entering a third party's property on which there exists a dangerous condition not created or maintained by the landowner and over which the landowner has no control"); *Rodriguez v. Detroit Sportsmen's Congress*, 406 N.W.2d 207, 210 (Mich. Ct. App. 1987) (noting that "the law does not ordinarily impose a duty of care upon the occupier of land beyond the area over which he has possession or control. Where the occupant of one parcel of land has been held responsible for the condition of an adjoining parcel to which another has title or possession, such responsibility is predicated on the fact that he exercised control over the land beyond his boundaries." (footnote call number omitted)); *see also Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 256 (Alaska 2000) (examining the rule in various jurisdictions limiting liability to risks on a landowner's property and noting that "courts traditionally have held that a landlord never had a duty to erect a fence protecting tenants from off-site conditions"). Further, in those cases cited by Plaintiffs, often a stated reason for extending the landowner's duty beyond his control is that the courts see no reason not to. *See Calkins*, 792 P.2d at 41 (where the injury occurred outside the boundaries of the property, the court stated that "we find no reason to deny liability as a matter of law"); *Limberhand*, 706 P.2d at 499 (where the dangerous condition was located on adjacent property, the court stated that "we see no reason to shield the landowner from liability as a matter of law"). However, where, as here, Plaintiffs are asking a court to impose on a landowner a new, heretofore unrecognized duty to make safe a condition on land not under the landowner's control, something more compelling than the absence of a reason not to is required.

> Legal rights and liabilities must rest upon some reasonably settled basis, fixed either by the common law or by statute. . . . "While the courts should and do extend the application of the common law to the new conditions of advancing civilization, they may not create new principles or abrogate a known one. If new conditions cannot be properly met by the application of existing laws, the supplying of needed laws is the province of the Legislature and not the judicial department of the government."

*Briscoe v. Henderson Lighting & Power Co.*, 148 N.C. 396, 413, 62 S.E. 600, 607 (1908) (quoting *Walker v. R.R. Co.*, 53 S.E. 113, 115 (Va. 1906)). The case law in this State clearly establishes that while a landowner has a duty to exercise reasonable care in keeping his premises safe, the landowner is not an insurer of the safety of persons on the premises, *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638, 281 S.E.2d 36, 38 (1981), and certainly is not an insurer of the safety of persons off the premises. The landowner is not obligated to protect against injury from a dangerous condition over which the landowner has no control. As such, and contrary to the allegations in Plaintiffs' complaint, Defendants as landowners had no duty to erect a "suitable barrier" to prevent Lampkin's access to the pond on the neighboring property.[4]

In their brief on appeal, however, Plaintiffs appear to retreat slightly from their position at pleading, contending that even despite the nonexistence of a duty to erect a fence, Defendants had a duty "to *maintain* a fence already existing." In support of this contention, Plaintiffs first point out that it would be, "by simple maintenance, relatively easy" for Defendants to keep children on their land by fixing the existing fence. However, the "comparative ease or difficulty" of maintaining the fence is irrelevant to the existence of Defendants' alleged duty to use reasonable care to keep people on their property. Rather, that fact speaks to the extent of the duty once that duty is determined to exist. *See Fitch*, 234 N.C. at 635, 68 S.E.2d at 257 ("The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to . . . the comparative ease or difficulty of preventing the danger . . . and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions." (quoting *Peters v. Bowman*, 47 P. 113 (Cal. 1897))). Therefore, all those reasons that support the conclusion that Defendants had no duty to erect a fence to protect against injury at

___

4. We note that Plaintiffs also cursorily argue on appeal that the existence of a duty to erect a fence is supported by a landlord's duty under N.C. Gen. Stat. § 42-42 to "[k]eep all common areas of the premises in safe condition." N.C. Gen. Stat. § 42-42(a)(3) (2011). As with the landowner's duty of reasonable care, this duty refers specifically to keeping the landlord's premises safe and has not been interpreted by our courts to extend beyond the control of a landlord. *See, e.g., Vera v. Five Crow Promotions, Inc.*, 130 N.C. App. 645, 650, 503 S.E.2d 692, 696 (1998) (adopting "well[-]established common law principle" that a landlord who has neither possession nor control of the leased premises is not liable for injuries to third persons). Therefore, Defendants as landlords, likewise, had no duty to erect a barrier to prevent Lampkin's access to the neighboring pond.

the pond likewise support the conclusion that Defendants had no duty to mend their fence.

Plaintiffs next contend, however, that even if a landowner generally has no duty to properly maintain a fence and prevent access to a neighboring pond, Defendants in this case assumed that duty by "embark[ing] on a course of conduct . . . of actively erecting and/or utilizing a perimeter fence for the purpose of security and containment of children residing in the apartments." We are unpersuaded.

This "assumption of duty" theory, or "voluntary undertaking" doctrine, which arises from "the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care," *Pinnex v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955), has been consistently recognized in North Carolina and is "implicated when a defendant voluntarily undertakes to provide needed services to the plaintiff when otherwise she would have no obligation." *Davidson v. Univ. of N.C. at Chapel Hill*, 142 N.C. App. 544, 558, 543 S.E.2d 920, 929 (internal quotation marks omitted) (quoting David A. Logan and Wayne A. Logan, *North Carolina Torts* § 2.20, at 27 (1996)), *disc. review denied*, 353 N.C. 724, 550 S.E.2d 771 (2001). As is obvious from the name of the doctrine, as well as from our cases applying it, the doctrine is only applicable where there is some showing of an act or acts by the defendant indicating that the defendant actually engaged in some undertaking. *See, e.g., id.* at 559, 542 S.E.2d at 929-30 (holding that the defendant voluntarily undertook duty to "advise and educate cheerleaders in regard to safety" where the defendant "acknowledged that it assumed certain responsibilities with regard to teaching the cheerleaders about safety" by advising, educating, and informing students about safety and by insuring that safety information was communicated to the cheerleaders); *Hawkins v. Houser*, 91 N.C. App. 266, 270, 371 S.E.2d 297, 299 (1988) (holding that the defendants, in the active course of conduct of "telephoning for aid, had the positive duty to use ordinary care in performing that task").

In this case, the only allegations in Plaintiffs' complaint that arguably relate to an undertaking by Defendants are the following: (1) the fence "served to secure the apartment campus as well as provid[e] a level of containment for the many children residing in the apartments"; (2) when the owner of the pond informed an employee in the apartment complex office that children were coming on to her property, "[s]he was advised by the [employee] that they would look into the matter"; and (3) "the fence was owned by [the apartment

complex].￼" In our view, these allegations are insufficient to show that Defendants acted in any way that could constitute an undertaking and, thus, are insufficient to support the application of the voluntary undertaking doctrine in this case.

First, the allegation that the fence "served to" secure and provide some containment merely states two possible effects of the existence of the fence, and no more shows that Defendants assumed a duty to prevent access to the pond than does an allegation that the apartment complex has exterior doorways between interior hallways and outdoor common areas and that those doors serve to secure the apartments and contain children. Absent some allegation that Defendants intended for the fence to have those effects or maintained the fence for those purposes, the allegation that the fence served to secure and contain is insufficient to support application of the doctrine.

Second, the apartment complex employee's statement that "they would look into the matter" is wholly noncommittal and, while it may, at best, be sufficient to show that the employee or Defendants did, in fact, look into the matter, the statement does not allow any inference that Defendants, upon looking into the matter and becoming aware of a possible danger, took any action to provide a needed service to Plaintiffs by remedying the danger. As such, the allegation is insufficient to support application of the voluntary undertaking doctrine.

We are left, then, with Plaintiffs' allegation that Defendants owned the fence and the question of whether mere ownership of the fence is sufficient to show that Defendants undertook to prevent children's access to the neighboring pond. We believe it is not.

As an initial matter, we note that there is nothing in the complaint to support an inference that Defendants erected the fence, which, combined with other circumstances, could in turn support an inference that Defendants erected the fence to remedy a known dangerous condition. However, even if we assume from the fact of their ownership of the property that Defendants erected the fence, there is nothing to indicate whether the fence was erected after the playground and pond came into existence or before. Were it the latter, Defendants' erection of the fence could not support an inference that the fence was built to remedy any dangerous condition. Furthermore, beyond the absence of an allegation that Defendants erected the fence, there is nothing in the complaint indicating that Defendants ever undertook to maintain the fence or utilize it for any purpose. Faced with the absence of any further allegations, we must conclude

LAMPKIN v. HOUSING MGMT. RES., INC.

[220 N.C. App. 457 (2012)]

that the bare fact of Defendants' ownership of the fence—or, more accurately, Defendants' ownership of land on which a fence is located—is insufficient to show that, in this case, Defendants undertook to provide to Plaintiffs the service of preventing children's access to the neighboring pond. Accordingly, the allegations in Plaintiffs' complaint are insufficient to support application of the voluntary undertaking doctrine.

Finally, Plaintiffs support their contention that Defendants had a duty to maintain the fence by reference to an operating manual for the apartment complex that states: "If a property utilizes fencing along its perimeter as an exterior security fence whether owned by the property or not, the fencing must be evaluated for deficiencies." This argument is also unavailing because, as discussed *supra*, there is nothing in Plaintiffs' complaint to indicate that the apartment complex was *utilizing* the fence "as an exterior security fence" or in any other way. Thus, even if this operating manual were sufficient to impose a duty on Defendants, the complaint does not allege facts sufficient to show that Defendants would have breached this duty.

Based on the foregoing, we conclude that Plaintiffs' complaint fails to sufficiently allege that Defendants breached a duty owed to Plaintiffs, and, thus, Plaintiffs have failed to set forth a *prima facie* claim of negligence. Plaintiffs' complaint was properly dismissed, and the ruling of the trial court is

AFFIRMED.

Judges HUNTER, ROBERT C., and BEASLEY concur.